UNITED STATES v. HAMBURG–AMERIKANISCHE PACKET–FAHRT–ACTIEN–GESELLSCHAFT et al.

(Circuit Court, S. D. New York. December 20, 1911.)

1. COMMERCE (§ 47*)—FOREIGN COMMERCE—INTERNATIONAL TRANSPORTATION OF PASSENGERS—REGULATION.

The transportation of passengers between the United States and Europe forms a part of the commerce of the United States with foreign nations subject to congressional regulation, under which right Congress has power to prohibit all contracts, combinations, and conspiracies in restraint of such commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*]

2. MONOPOLIES (§ 16*)—FOREIGN COMMERCE.

A contract between steamship lines for division of steerage passenger transportation between the United States and Europe according to specified percentages, containing stipulations for the pooling of receipts and embracing provisions to secure its enforcement, and, while leaving the fixing of rights to individual discretion, providing that the holders of 75 per cent. of the shares of traffic might direct any party to raise or reduce its charges, directly and materially affected foreign commerce, and since, with reference to east-bound traffic, the actual commencement of the transportation was within the territory of the United States, the contract was an unlawful combination and conspiracy, in violation of the federal Anti-Trust Act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. § 16.*]

3. MONOPOLIES (§ 16*)—FOREIGN COMMERCE—ILLEGAL CONTRACT.

Where a contract for international transportation of steerage passengers between the United States and European ports constituted an illegal combination and conspiracy, in violation of the federal Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), and was in restraint of foreign trade and commerce, materially affecting the foreign commerce of the United States, and was intended to be put into force there, it was immaterial where it was entered into, or that it was to be carried out or performed in foreign countries, or by the use of foreign vessels.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. § 16.*]

In Equity. Suit by the United States against the Hamburg-Amerikanische Packet-Fahrt-Actien-Gesellschaft and others. On demurrer to the bill for want of equity. Overruled.

The bill was filed by the United States under the federal anti-trust statute, to restrain a further execution of an agreement between certain steamship companies for the formation of an association, called the "Atlantic Conference," relating to the carriage of steerage passengers between the United States and Europe.

Henry A. Wise, U. S. Atty., of New York City.

Burlingham, Montgomery & Beecher, Lord, Day & Lord, Choate & Larocque, Spooner & Cotton, and A. L. & S. F. Jacobs, all of New York City, for defendants.

Before LACOMBE, COXE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. [1] It may be accepted without discussion that transportation of passengers between this country and Eu-

rope forms a part of the commerce of the United States with foreign nations. It is also clearly established that Congress has power to prohibit all contracts, combinations and conspiracies in restraint of such part of the foreign commerce of the United States. The real question here is not one of power but of interpretation. The inquiry is whether that which is charged against the defendants comes within the provisions of the anti-trust statute and this inquiry has two phases:

(1) Does the agreement in question directly and materially affect foreign commerce?

(2) Does such agreement with the acts stated in the petition amount to an unlawful contract, combination or conspiracy?

[2] The agreement affects foreign commerce because its operation must necessarily divert a part thereof, viz.: the business of carrying steerage passengers, from the natural channels of free competition into fixed channels assigned to the parties. The different lines obtain not that which would come to them from their separate efforts but prescribed and certain percentages of the traffic.

The agreement directly and materially affects foreign commerce and is partly intra-territorial because it is to be carried out in part in the United States. Confining ourselves to east-bound traffic, it is evident that the contract contemplates the solicitation of business, the making of contracts of carriage, the taking on board of passengers, and the actual commencement of transportation within the territory of the United States. It requires acts to be done in this country; such acts are as material and essential as those to be performed abroad, and the part of the contract requiring them cannot be separated from the remainder.

The prohibitions of the anti-trust statute apply broadly to contracts in restraint of trade or commerce with foreign nations. This contract directly and materially affects such commerce and if it unlawfully restrains it, it comes within the statute. We see nothing to warrant the contention that the act should be narrowly interpreted as prohibiting only contracts which are to be performed wholly within the territorial jurisdiction of the United States nor—if it were for us to consider—any reason for concluding that a broader construction would lead to international complications.

[3] As the contract directly and materially affects the foreign commerce of this country by being put into effect here, it is immaterial where it was entered into or by what vessels it was to be, or has been, performed. Citizens of foreign countries are not free to restrain or monopolize the foreign commerce of this country by entering into combinations abroad nor by employing foreign vessels to effect their purpose. Such combinations are to be tested by the same standard as similar combinations entered into here by citizens of this country. The vital question in all cases is the same: Is the combination to so operate in this country as to directly and materially affect our foreign commerce? As said by the Circuit Court of Appeals for this Circuit in Thomsen v. Union Castle Mail S. S. Co., 166 Fed. 251, 92 C. C. A. 315:

"That the combination was formed in a foreign country is likewise immaterial. It affected the foreign commerce of this country and was to be put into operation here."

The final inquiry is whether the acts and agreements of the defendants as set forth in the petition in addition to materially and directly affecting foreign commerce, restrain it within the meaning of the statute. This inquiry requires the examination of the second phase of the question with which we started, and it is whether such acts and agreements amount to an unlawful contract, combination or conspiracy.

The petition states the contract at length. It shows a division of traffic into stated percentages, contains stipulations for the pooling of receipts; and embraces provisions to secure its enforcement. In general, the fixing of rates is left to individual discretion although the holders of 75 per cent. of the shares of traffic may direct any party to raise or reduce its charges.

The petition, after stating the contract, shows the methods adopted by the associated defendants in fighting competitors and in forcing them out of business, and charges unfairness and oppression. It further alleges that the defendants in carrying out the combination have charged excessive and arbitrary rates to the public. It also alleges that by the contract and the practices thereunder the defendants have obtained a virtual monopoly of that part of the foreign commerce of the United States included within the scope of the combination.

Testing the petition by the allegations which it contains, as must be done upon demurrer, it is clear that—the effect upon foreign commerce being shown—the averments make out a combination and conspiracy in violation of the anti-trust statute. Whether or not the statute is directed against all combinations in restraint of competition, it is certain that it embraces those in which the purpose and effect are to charge arbitrary and excessive transportation rates. Whether the statute be broadly or narrowly construed, it is clear that it prohibits combinations and conspiracies to restrain the business of transporting passengers when accompanied with acts of oppression and attempts to monopolize.

The demurrers of the defendants are overruled with costs and they are assigned to answer by the February rule day.