MONTSHIP LINES, LIMITED, et al., Petitioners,

v.

FEDERAL MARITIME BOARD and the United States of America, Respondents.

Nos. 15783–15809, 15814, 15838, 15857, 15860, 15879, 15880, 15901, 15902, 15904, 15911, 15917, 15920, 15922, 15938, 15947, 15982, 15983.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 16, 1961.

Decided June 30, 1961.

Mr. Burton H. White, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, who was on the brief for petition-

ers in cases numbered 15808, 15814, 15901, 15902, 15904, 15938, 15947, 15982 and 15983, and intervenors in case numbered 15802, argued for all petitioners except petitioners in cases numbered 15879, 15880 and 15917.

Mr. Elmer C. Maddy, New York City, with whom Mr. Ronald A. Capone, Washington, D. C., was on the brief, for petitioners in cases numbered 15801 and 15838, argued for all petitioners.

Mr. Leonard G. James, of the bar of the Supreme Court of California, San Francisco, Cal., pro hac vice, by special leave of Court, for petitioners in cases numbered 15802, 15879, 15880 and 15917.

Mr. Charles F. Warren, Washington, D. C., also entered an appearance for petitioners in cases numbered 15802, 15879 and 15880, and intervenor Wegal A.B. (Totem Line) in case numbered 15802.

Mr. Russell B. Pace, Jr., Washington, D. C., with whom Mr. Arthur J. Phelan, Washington, D. C., was on the brief for petitioners in cases numbered 15800, 15802, 15803, 15809, 15857, 15904, 15938, 15947, 15982 and 15983, and for intervenors in case numbered 15802.

Mr. Frederick M. Bradley, Washington, D. C., also entered an appearance for petitioners in cases numbered 15800 and 15803.

Mr. Charles W. Halleck, Washington, D. C., also entered an appearance for petitioners in case numbered 15809.

Mr. Morton Zuckerman, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Mr. Morton Liftin, Washington, D. C., was on the brief, for petitioners in cases numbered 15804, 15805, 15920 and 15921.

Mr. Edward Aptaker, Asst. Gen. Counsel, Federal Maritime Board, with whom Messrs. James L. Pimper, Gen. Counsel, Federal Maritime Board, and Robert E. Mitchell, Asst. Gen. Counsel, Federal Maritime Board, were on the brief, for respondent Federal Maritime Board.

Mr. Richard A. Solomon, Atty., Dept. of Justice, for respondent United States of America.

Mr. Morton Liftin, Washington, D. C., was on the brief for petitioners in cases numbered 15783 through 15798, and 15922.

Mr. Harry A. Inman, Washington, D. C., was on the brief for petitioners in cases numbered 15799 and 15860.

Messrs. Elkan Turk and Elkan Turk, Jr., New York City, were on the brief for petitioners in cases numbered 15806 and 15911.

Messrs. J. Joseph Noble, New York City, and Roy Leifflen Washington, D. C., were on the brief for petitioners in case numbered 15807.

Mr. Arthur E. Tarantino, Washington, D. C., entered an appearance for petitioners in cases numbered 15802, 15808, 15814, 15901, 15902 and 15947.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Pursuant to the Judicial Review Act of 1950, 5 U.S.C.A. §§ 1031–1042, one hundred and eighty-three alien corporations engaged in the common carriage of cargo and passengers by water between the United States and foreign countries [1] bring these petitions to review an order of the Federal Maritime Board entered April 11, 1960, under § 21 of the Shipping Act of 1916.[2] This or-

---

1. In addition there are five petitioners which are domestic corporations and two petitioners which contend that as of the date of the Board's order they were not engaged in the common carriage of cargo or passengers between the United States and foreign countries.

2. Section 21, 46 U.S.C.A. § 820, provides: "The Federal Maritime Board and the

Secretary of Commerce may require any common carrier by water, or other person subject to this chapter, or any officer, receiver, trustee, lessee, agent, or employee thereof, to file with it or him any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such

der requires every common carrier by water subject to the Act to file "a list identifying every contract, agreement or understanding, involving the water-borne commerce of the United States," which was in effect as of January 1, 1960, between the carrier and "any other common carrier by water * * * or with any freight forwarder, terminal operator, stevedore, or ship's agent * * * which related or pertained to" seven specified subjects.[3] In addition, each carrier was required to file with the Board copies of every such agreement not previously filed. The carriers were required to certify under oath that the documents submitted were true and complete records of the agreements called for.

The petitioners filed motions for reconsideration of the Board's order. In each instance the Board denied these motions on the merits without hearing. The orders denying these motions are also before us on review.

Petitioners and respondents join issue on a number of matters. We shall deal first with those questions pertaining to our jurisdiction to review the Board's § 21 order. Then we shall consider the general issues affecting all petitioners. Finally we shall turn to the special issues which are raised by and which affect only certain of the petitioners.

## I. Jurisdiction.

### A. Effect of 28 U.S.C. § 2112.

On June 8, 1960, the first of the instant petitions to review the Board's § 21 order were filed in this court. On the same date a similar petition was filed by States Marine Lines in the United States Court of Appeals for the Second Circuit. Two days later another petition was filed in the Second Circuit by Kerr S. S. Co.

A certified index of the record was filed in this court on October 3, 1960. This is equivalent to filing of the record itself, under 28 U.S.C. § 2112(a). We are advised that neither the record nor any index of the record was at any time filed in the Second Circuit. On October 31, 1960, the Second Circuit upheld the Board's order and denied Kerr's petition. Kerr S. S. Co. v. United States, 284 F.2d 61. The question initially presented is whether in light of the applicable statutory provisions the Second Circuit's action precludes our review.

Section 1036 of Title 5 U.S.C.A., provides in part:

"* * * the agency shall file in the office of the clerk of the court of appeals in which the proceeding is pending the record on review, as provided in section 2112 of Title 28."

Section 2112(a) of Title 28 provides in part:

"* * * If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency * * * concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect.

---

carrier or other person subject to this chapter. Such report, account, record, rate, charge, or memorandum shall be under oath whenever the Board or Secretary so requires, and shall be furnished in the form and within the time prescribed by the Board or Secretary. Whoever fails to file any report, account, record, rate, charge, or memorandum as required by this section shall forfeit to the United States the sum of $100 for each day of such default.

"Whoever willfully falsifies, destroys, mutilates, or alters any such report, account, record, rate, charge, or memorandum, or willfully files a false report, account, record, rate, charge, or memorandum shall be guilty of a misdemeanor, and subject upon conviction to a fine of not more than $1,000, or imprisonment for not more than one year, or to both such fine and imprisonment."

3. For the full text of the Board's order, see Appendix.

to such order to any other court of appeals."

It is clear, in light of these statutory provisions that we have jurisdiction. The mere fact that petitions for review of the same order were filed in the Second Circuit and that that court has already upheld the order does not oust this court of jurisdiction. The question whether the Second Circuit had jurisdiction to decide Kerr in light of 28 U.S. C. § 2112(a) and 5 U.S.C.A. § 1039(a),[4] is not before us.

### B Timeliness of Certain Petitions to Review.

Section 4 of the Review Act, 5 U.S.C.A. § 1034, provides in part:

"Any party aggrieved by a final order reviewable under this chapter may, within sixty days after entry of such order, file in the court of appeals * * * a petition to review such order."

Eleven of the petitioners [5] sought judicial review of the order of April 11 more than sixty days after the order was served, but within sixty days after the Board acted upon their motions for reconsideration of that order. The Maritime Board asserts that these petitions to review are untimely and seeks their dismissal. We think it clear, however, that the petitions in question were timely filed under our decision in Outland v. Civil Aeronautics Board, 1960, 109 U.S.App.D.C. 90, 284 F.2d 224, 227, where we held that the statutory sixty-day period for seeking judicial review of Civil Aeronautics Board orders did not commence until the Board acted upon Outland's motion for rehearing.[6]

The Maritime Board urges, however, that Outland is inapplicable since none of the motions for reconsideration we discuss were filed with the Board within the thirty-day period provided by Rule 16 of its Rules of Practice and Procedure. But we agree with petitioners that the Board's consideration of these motions on their merits constituted a waiver of the Board's own limitation period. Cf. Bowman v. Loperena, 1940, 311 U.S. 262, 61 S.Ct. 201, 85 L.Ed. 177; City of Pittsburgh v. Federal Power Comm., 1956, 99 U.S.App.D.C. 113, 237 F.2d 741. Although a court's or agency's consideration of an untimely motion for rehearing or reconsideration may not constitute a waiver of a limitation period fixed by Congress,[7] we think the rule is otherwise when the limitation period is imposed by the agency.

### C. Intervention.

Section 8 of the Review Act, 5 U.S.C.A. § 1038, provides in part:

" * * * any party or parties in interest in the proceeding before the agency whose interests will be affected if an order of the agency is or is not enjoined, set aside, or suspended,

---

4. This section provides:
 "Upon the filing and service of a petition to review, the court of appeals shall have jurisdiction of the proceeding. The court of appeals in which the record on review is filed, on such filing, shall have jurisdiction to vacate stay orders or interlocutory injunctions theretofore granted by any court, and shall have exclusive jurisdiction to make and enter, upon the petition, evidence, and proceedings set forth in the record on review, a judgment determining the validity of, and enjoining, setting aside, or suspending, in whole or in part, the order of the agency."

5. Compania Anonima Venezolana de Navegacion; Pacific Shipowners, Ltd.; Orient Mid-East Lines, Inc.; Jugoslavenska Linijska Plovidba; Splosna Plovba; Navigazione Alta Italia, S.p.A.; Societa Italiana di Armemento "Sidarma"; Black Star Lines, Ltd.; Compania Colombiana de Navegazion Maritima, Ltd.; Compania Maritima Orlanda, S.A.; Marina Mercante Nicaraguense, S.A.

6. The controlling statute in the Outland case, 49 U.S.C.A. § 1486(a), provides that "any order * * * issued by the Board * * * shall be subject to review * * * upon petition, filed within sixty days after the entry of such order. * * *"

7. Cf. Safeway Stores v. Coe, 1943, 78 U.S.App.D.C. 19, 136 F.2d 771, 148 A.L. R. 782.

may appear as parties thereto of their own motion and as of right, and be represented by counsel in any proceeding to review such order. Communities, associations, corporations, firms, and individuals, whose interests are affected by the agency's order, may intervene in any proceeding to review such order."

A number of the carriers subject to the Board's order filed notices of intention to intervene [8] or motions for leave to intervene in the instant review proceedings. Most of them also filed petitions to review which we hold above to be timely.[9] But four of the carriers seeking intervention did not file petitions to review.[10]

Assuming *arguendo* that these four are not "parties in interest in the proceeding before the agency" as is required for intervention as a matter of right, it is clear that they are parties "whose interests are affected by the agency's order" and we have discretion under the statute to permit intervention. Allowing these carriers to intervene would not in any appreciable way further complicate this litigation. The Board has not shown that it will be prejudiced by intervention, and the questions raised by the intervenors are identical to those raised in the cases in which intervention is sought. The motions for leave to intervene will, therefore, be granted.

## II. General Issues.

### A. Authority under Section 21.

Petitioners advance three contentions as to why the instant order falls outside the authority conferred on the Board by § 21 of the Shipping Act. They argue: (1) § 21 does not cover "contracts, agreements, and understandings"; (2) § 21 is limited to obtaining information relevant to the Board's "regulatory" power over carriers' rates under §§ 17 and 18; and

(3) § 21 does not authorize the Board to compel the production of documents located outside the territorial confines of the United States.

Petitioners' first contention is properly answered in Kerr: namely, that, although § 21 does not expressly speak of "contracts, agreements or understandings," it is clear that such papers are encompassed within the broad language of the section which requires carriers and other persons subject to the Act to file "any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this chapter." Mutual dealings between parties culminating in consensual arrangements are clearly "transactions." And the writings evidencing the arrangements arrived at are just as clearly "memoranda." Therefore, the instant order falls within the scope of § 21.

Petitioners present an elaborate argument based upon the legislative history of § 21. They contend that section is modeled upon § 20 of the Interstate Commerce Act, 34 Stat. 594 (1906), 49 U.S.C.A. § 20, and that a year before the enactment of the Shipping Act the Supreme Court in United States v. Louisville & N. R. R., 1915, 236 U.S. 318, 35 S.Ct. 363, 368, 59 L.Ed. 598, limited the similar language of § 20 to cover only accounting and bookkeeping records. Assuming *arguendo* that petitioners' claims are correct, there is good reason why they should not be followed and why § 21 should not be given a similarly restrictive meaning. In Louisville the Interstate Commerce Commission had attempted to inspect the railroad's correspondence under § 20. Had the Supreme Court upheld the Commission's authorization to do so under § 20, it would have been forced to resolve the question whether such inspection constituted an

8. For our present purposes, we treat the notices of intention to intervene as motions for leave to intervene.

9. We dismiss as moot the motions for leave to intervene filed by carriers which also filed petitions to review held timely herein.

10. Americana Shipping Corp.; Kvarnerska Plovidba; Wegal A.B. (Totem Line); Skibsaktieselskapet Solstad.

unreasonable search and seizure. Under the Court's then view of the Fourth Amendment's limitation on the compulsory production of corporate records and documents—a view no longer followed, compare Federal Trade Comm. v. American Tobacco Co., 1924, 264 U.S. 298, 44 S. Ct. 336, 68 L.Ed. 696, with Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, and United States v. Morton Salt Co., 1950, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401, the Court would probably have had to answer that question in the affirmative. Because the prevailing views on the constitutional question led to a restrictive reading of § 20 of the Interstate Commerce Act in 1915 does not seem to us to justify a similarly restrictive reading of § 21 of the Shipping Act today when those views are no longer followed.

In addition it should be noted that in Louisville the Supreme Court defined "records" as used in § 20 of the Interstate Commerce Act to include "the written evidence of [a corporation's] contracts and business transactions."[11] Section 21 of the Shipping Act also speaks of "records," and consequently the Louisville case may be read as supporting the Board's authority under that section.

 Petitioners' second contention is that § 21 is limited to enabling the Board to obtain information relevant to carrying out its supervisory power over carriers' rates under §§ 17 and 18 and is therefore inapplicable where the Board is seeking information to determine whether the prohibitions of §§ 14–16 are being complied with. We find no basis in the Shipping Act for this bifurcation of the Board's authority. Furthermore, petitioners' claim would appear to be laid at rest by the Supreme Court's description of § 21 in Isbrandtsen-Moller Co. v. United States, 1937, 300 U.S. 139, 144–145, 57 S.Ct. 407, 410, 81 L.Ed. 562:

"The purpose of section 21 is not far to seek. Other sections forbid allowance of rebates, require the filing of agreements fixing or regulat-ing rates, granting special rates, accommodations or privileges, which may be disapproved, canceled, or modified if the Board finds them unjustly discriminatory or violative of the act, prohibit undue or unreasonable preferences or the cutting of established rates and unjust discrimination between shippers or ports. To enable it to perform its functions the Board may well need such information as that which the section gives it power to demand."

This quotation refers to the Board's responsibilities under §§ 14–16 as well as §§ 17 and 18. It is apparent that § 21 is not to be restricted to what petitioners characterize as the "regulatory" as opposed to the "enforcement" sections of the Act.

Petitioners finally contend that, since § 21 does not expressly authorize the Board to require the production of records or memoranda located outside the territorial confines of the United States, that power ought not to be implied. In support of this argument, they point to § 27 of the Shipping Act, 46 U.S.C.A. § 826, under which the Board "for the purpose of investigating alleged violations" may subpoena witnesses or documents "from any place in the United States at any designated place of hearing." Petitioners contend this restriction should be read into § 21. We think not.

It is questionable whether the Board is in fact powerless under § 27 to subpoena documents outside the territorial confines of the United States. Cf. Securities and Exchange Comm. v. Minas De Artemisa, S.A., 9 Cir., 1945, 150 F.2d 215, in which a similar description of the Security and Exchange Commission's subpoena power under § 22(b) of the Securities Act of 1933, 15 U.S.C.A. § 77 v(b), was held not to preclude the Commission from compelling persons within the United States to produce documents of foreign corporations situated outside this country.

11. 236 U.S. at page 334, 35 S.Ct. at page 368.

■ In any event, in light of the coverage and the purposes of the Shipping Act, we can see no reason to restrict § 21 to cover only information within the United States. In enacting the Shipping Act, which deals with foreign as well as interstate commerce, Congress was clearly mindful of the fact that foreign flag as well as United States carriers were subject to regulation thereunder. See H.R.Rep. No. 659, 64th Cong., 1st Sess. (1916). If the Board's investigatory powers were limited to the territorial confines of the United States, regulation of foreign flag carriers would be hampered to a substantial degree. Consequently, we will not read into § 21 a territorial limitation which appears to be contrary to the purposes of the Shipping Act.

We must reject petitioners' contentions regarding protests of foreign governments and extra-territorial enforcement of the Board's order. As the Second Circuit pointed out in Kerr, the protests of foreign governments are matters for consideration by the Executive and not the courts. And the question as to whether the order can be enforced by extra-territorial means is not presently before us. All that is here involved is whether the order was properly and validly issued.

### B. Notice of Proposed Issuance of a Section 21 Order.

■ Petitioners next contend that because the § 21 order is industry-wide in application it is analogous to rule-making and the Board was required to give notice of the proposed issuance of the order to interested parties so they could submit their views and arguments. Clearly the order is not legislative in character. In any event, notice and hearing are not prerequisite to the issuance of such an order directed to a single carrier. Isbrandtsen-Moller Co. v. United States, supra. That the Board chose in this instance as a matter of convenience to issue one order directed to many carriers rather than to issue many orders each directed to a single carrier does not convert the instant order into the promulgation of a rule.

### C. The Fourth Amendment.

■ The Board's order does not state the purpose for which the information is demanded. For this reason, among others, petitioners contend that the order violates the Fourth Amendment.[12]

Although earlier limitations on the investigatory powers of administrative agencies have been relaxed in recent years,[13] the Supreme Court has informed us that "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. * * * But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208 [66 S.Ct. 494, 505, 90 L.Ed. 614, 166 A.L.R. 531]." United States v. Morton Salt Co., 1950, 338 U.S. 632, 652–653, 70 S.Ct. 357, 369, 94 L.Ed. 401.

What is "reasonably relevant" depends on the purpose and nature of the investigation undertaken by the agency. "[R]elevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." Okla-

---

12. Although this matter was argued in the briefs in the Kerr case, the Second Circuit's opinion does not appear to resolve this issue. We note that the court's opinion does not appear to state the purpose of the Board's order:

"It does not appear that any of the petitioners tried to show what was the financial burden of listing and copying the contracts in question, or that it was out of all reasonable proportion to *any purpose that the proposed investigation might have.*" 284 F.2d at page 64, emphasis supplied.

13. See Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494. 90 L.Ed. 614.

homa Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 209, 66 S.Ct. 494, 506, 90 L.Ed. 614. And as Professor Davis has pointed out, "the breadth of a subpena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators." 1 Davis, Administrative Law Treatise § 3.06 (1958). Consequently, the Board's failure in the instant case to state its purpose in requiring the information demanded precluded a determination of relevancy.

Respondents, relying on Morton Salt, contend that no detailed specification of purpose is necessary when an agency is investigating "merely on suspicion that the law is being violated, or even * * * because it wants assurance that it is not." [14] If this order is pursuant to such an investigation, a matter which the Board contends in its brief but which does not appear from the face of the order, it might be argued that a *detailed* specification at this stage of "initial inquiry" may not be feasibly required. Whatever may be the validity of that argument, we think it cannot excuse the absence of any indication whatsoever, as in the instant order, of the investigation's purpose since no basis is thereby afforded for determining the relevancy of the information demanded. And just as the reasons underlying agency action must appear from the agency's order, so too we think that the statement of purpose must be apparent from the order itself and cannot be supplied by contentions in the briefs.

In any event, the language in Morton Salt upon which the Government relies was not directed to the matter of purpose and relevancy, but rather to the issue of whether the Federal Trade Commission had power to compel reports absent "probable cause" to believe that the law was being violated.

The Government also points to Isbrandtsen-Moller Co. v. United States, supra; and Bowles v. Northwest Poultry & Dairy Products Co., 9 Cir., 1946, 153 F.2d 32, for the proposition that statements of purpose are unnecessary. In Isbrandtsen-Moller which, like the instant case, involved an investigatory order pursuant to § 21 of the Shipping Act, the order recited:

"It appearing, That full and complete information as to the rates and charges for or in connection with the transportation of certain property from continental United States to points in foreign countries by carriers by water in foreign commerce subject to the Shipping Act, 1916, is necessary to the proper administration of the regulatory provisions of said act * * *.[15]"

This order, stating the subject of the investigation to be rates and charges, provided a standard for determining the relevancy of the documents demanded. Similarly, the order involved in Northwest Poultry contained a sufficient statement of purpose and relevancy since the records there required were needed in order to determine whether the corporation had complied with a particular Regional Price Order under the Emergency Price Control Act.

Since the reasonableness of the order under review is dependent upon the relevancy of the information demanded, and that cannot be determined in the absence of a statement of purpose, the order is fatally defective. Because petitioners' contentions regarding the breadth and the vagueness of the order are in part dependent upon the question of relevancy, we find it unnecessary to presently deal with them. The order under review is vacated and the case remanded to the Board for proceedings not inconsistent with this opinion.

14. 338 U.S. at pages 642–643, 70 S.Ct. at page 364.

15. Isbrandtsen-Moller Co. v. United States, D.C.S.D.N.Y.1936, 14 F.Supp. 407, 408.

### III. Special Issues.

#### A. Local Foreign Law Prohibiting Disclosure.

Several petitioners,[16] foreign steamship lines of Yugoslavia and Netherlands nationality assert that the production by them of documents required by the Board's § 21 order would be violative of their local national law. They point to provisions of the Yugoslav Criminal Code and the Netherlands Economic Competition Law which they contend preclude compliance with the Board's order.

■ Prior to determining whether these foreign laws do in fact forbid the production of documents such as those required by the Board's order and, if so, what effect this should have upon compliance, the appropriate procedure is to require these petitioners to make a good faith attempt to obtain a waiver of such restrictions from their respective governments. United States v. Standard Oil Co., N. J., D.C.S.D.N.Y.1958, 23 F.R.D. 1; Societe Internationale, etc. v. Mc-Granery, D.C.D.C.1953, 111 F.Supp. 435, affirmed sub nom. Societe Internationale, etc. v. Brownell, 1955, 96 U.S. App.D.C. 232, 225 F.2d 532, certiorari denied, 1956, 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818; Societe Internationale, etc. v. Brownell, 1957, 100 U.S.App.D.C. 148, 243 F.2d 254, reversed and remanded sub nom. Societe Internationale, etc. v. Rogers, 1958, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255.

Consequently, these petitioners should upon the remand bring any arguments that their local law prohibits compliance before the Board so that it can then initially determine whether petitioners have made a good faith effort to secure waivers and, if so, whether compliance is to be required.

#### B. Jurisdiction over Certain Petitioners.

Two of the petitioners [17] contend that they are not subject to the order since on the date of that order neither of them was a common carrier by water engaged in the foreign commerce of the United States. One petitioner contends that it terminated all service with the United States in November 1959, while the other contends it terminated service in February 1960.

Assuming *arguendo* that these petitioners would not be subject to the Board's order if they had permanently terminated their service to or from the United States before April 11, 1960, this court has nothing before it to show such termination other than declarations of petitioners in their briefs. This clearly seems to be a matter upon which evidence should be taken to determine the nature and extent of the cessation of these petitioners' activities. Consequently, on remand these petitioners should bring their contentions before the Board so it can have the opportunity to pass upon this issue in the light of an adequate factual record which can be then made.

We consider it unnecessary to consider the other contentions raised by the petitioners at this time.

Order vacated.

#### Appendix.

#### Federal Maritime Board Order, April 11, 1960

"Section 21 Order—Contracts, Agreements and Understandings of Common Carriers by Water."

By virtue of the authority vested in it by section 21 of the Shipping Act, 1916 (46 U.S.C.A. § 820), the Federal Maritime Board hereby orders every common carrier by water subject to said Act, in-

---

16. Koninklijke Nederlandsche Stoomboot Maatschappij, N.V.; N.V. Stoomvaart Maatschappij "Nederland"; Koninklijke Rotterdamsche Lloyd, N.V.; N.V. Nederlandsch-Amerikaansche Stoomvart Maatschappij ("Holland Amerika Lijn"); Nederlandsche Stoomvart Maatschappij "Oceaan," N.V.; Oranje Lijn (Maatschappij Zeetransport), N.V.; Jugoslavenska Linijska Plovidba; Splosna Plovba; Karenska Plovidba.

17. Prince Line Ltd.; Compania Espanola de Navegacion Maritima, S.A.

cluding but without limitation, those named in Appendix A attached hereto and made part hereof, to file with it on or before July 15, 1960, the following:

1. A list identifying every contract, agreement or understanding, involving the water-borne commerce of the United States, which it has entered into with any other common carrier by water and/or common carriers by water, and/or with any freight forwarder, terminal operator, stevedore, or ship's agent which was in effect as of January 1, 1960, which relates or pertains to:

(a) the fixing or regulating of rates, fares, charges or practices for the loading, unloading, handling, transporting, storing, or delivering of property or passengers;

(b) the giving or receiving of special rates, fares, accommodations, or other special privileges or advantages;

(c) the controlling, regulating, preventing or destroying of competition;

(d) the pooling or apportioning of earnings, losses or traffic or the joint use of equipment or facilities;

(e) the allotting of ports or the restricting or otherwise regulating of the number and character of sailings between ports;

(f) the limiting of, or regulating of, in any way, the volume or character of freight or passenger traffic to be carried or to be received, handled, stored or delivered;

(g) the providing for, in any manner, of an exclusive, preferential, or cooperative working arrangement.

Documents filed for approval under section 15 of said Act (46 U.S.C.A. § 814) may be identified by citation of the Federal Maritime Board number assigned thereto, and documents filed in the past year in response to another order issued pursuant to said section 21 may be identified by stating the dates of such order and response; as to others, specify the effective date and the parties.

2. A copy of every contract, agreement, or understanding identified on said list, which has not been filed for approval under said section 15, and has not been filed with the Board in the past year in response to an order issued pursuant to said section 21. If any such contract, agreement, or understanding is oral, it shall be set forth in a memorandum in sufficient detail to represent a true and complete record of the contract, agreement, or understanding.

3. A statement, under oath, by a duly authorized officer of the carrier, that the records submitted in response to items 1 and 2 above are true and complete records of all contracts, agreements and understandings of the character or nature required to be filed by this Order, to which such carrier was a party as of January 1, 1960.

By the Federal Maritime Board.

Date: April 11, 1960

James L. Pimper,
Secretary.