**PACIFIC WESTBOUND CONFERENCE,**
Petitioner,

v.

**UNITED STATES** of America and Federal Maritime Commission,
Respondents.

No. 19167.

United States Court of Appeals
Ninth Circuit.

April 30, 1964.

Lillick, Geary, Wheat, Adams & Charles, Frank L. Adamson, San Francisco, Cal., for petitioner.

William H. Orrick, Jr., Asst. Atty. Gen., Irwin A. Seibel, Dept. of Justice, Antitrust Division; and James L. Pimper, Gen. Counsel, Robert E. Mitchell, Deputy Gen. Counsel, Gordon M. Shaw and William J. Smith, Attys., Federal Maritime Commission; Washington, D. C., for respondents.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

On March 2, 1964, Pacific Westbound Conference (Conference), proceeding under the Review Act of 1950, as amended 64 Stat. 1129 et seq., 68 Stat. 961 et seq., 5 U.S.C. § 1031 et seq. (1958), petitioned this court to review Part I of an order issued by the Federal Maritime Commis-

sion on December 27, 1963. At the same time the Conference applied for an interlocutory injunction, and for a temporary stay.

The petitioner, representing twenty-five members, exists as a conference of common carriers by water engaged in the foreign water-borne commerce of the United States. The Commission order which it seeks to have reviewed is entitled: "Amended Section 21 Order—Study—The Trade from U. S. Pacific Coast Ports to Ports in Japan—Foreign Trade Study 63–11," referred to herein as "Section 21 Order." [1] Part I of that order required the Conference to produce at the Commission's offices in Washington, D. C., not later than February 20, 1964, two categories of documents described in the order, as quoted in the margin. [2] The Commission thereafter extended the time for compliance with Part I of the order to March 2, 1964. The grounds upon which relief from Part I of this order was sought, as stated in the petition for review, are set out in the margin. [3]

---

[1] This has reference to section 21 of the Shipping Act, 1916, as amended, 39 Stat. 736, as amended, 46 U.S.C. § 820 (1958), the first paragraph of which reads:

"The Federal Maritime Board and the Secretary of Commerce may require any common carrier by water, or other person subject to this chapter, or any officer, receiver, trustee, lessee, agent, or employee thereof, to file with it or him any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this chapter. Such report, account, record, rate, charge, or memorandum shall be under oath whenever the Board or Secretary so requires, and shall be furnished in the form and within the time prescribed by the Board or Secretary. Whoever fails to file any report, account, record, rate, charge, or memorandum as required by this section shall forfeit to the United States the sum of $100 for each day of such default."

Functions of the Board, under this section were transferred to the Commission by section 103(e) of 1961 Reorganization Plan No. 7, effective August 12, 1961,

26 F.R. 7315. See notes under 46 U.S. C.A. §§ 820, 1111.

[2] "a. A copy of any letters, memoranda, circulars, and other correspondence or documents exchanged between the conference and any of its common carrier member lines and/or any of their agents, during the period January 1, 1962, through September 30, 1963, relating to rates from U. S. Pacific Coast ports to Japan (hereinafter referred to as 'the subject trade') on any of the commodities listed in Attachment A hereto. Documents which merely list or state such rates without discussion need not be furnished.

"b. A copy of any reports, studies, analyses or documents compiled by or for or received by the conference between January 1, 1962, and September 30, 1963, with respect to all rates in the subject trade, charged by the conference. Documents which merely list or state such rates without discussion need not be furnished."

Thirty-seven commodities are named in the list referred to in paragraph (a) quoted above.

[3] "(a) The said Order does not state the purposes for which it was issued.

On March 2, 1964, this court granted a temporary stay pending hearing on the application for interlocutory injunction, to expire at 5:00 P.M. on March 17, 1964. At the same time the application for an interlocutory injunction was set for hearing on March 16, 1964. The United States and the Commission filed a memorandum in opposition to the application. A hearing on the application was held as calendared, and thereafter, on the same date, this court entered an order extending the temporary stay to 5:00 P.M. on March 30, 1964, and denying the application for an interlocutory injunction, "as of 5:00 P.M. on March 30, 1964."

The reason for denial of the application for an interlocutory injunction, as stated in the order, was that it appeared " * * * that there is no probability that petitioner may prevail on the merits, and no showing that irreparable damage would otherwise ensue." While it does not appear in the order of March 16, 1964, the reason why the temporary stay was extended to March 30, 1964, and the denial of the application for an interlocutory injunction was made effective as of that date, was so that petitioner would have this much additional time in which to comply with the questioned Commission order without risking the one hundred dollar per day penalty provided for in section 21 of the Shipping Act, 1916.[4]

Petitioner did not thereafter take any steps to comply with the section 21 order, notwithstanding the fact that the temporary stay expired on March 17, 1964. Since that date, it has been subject to the one hundred dollar a day forfeiture provision of section 21. Instead, it proceeded to take the steps called for by our Rule 34 in perfecting the review.

On April 11, 1964, the United States and the Commission moved in this court to dismiss the petition for review on the ground that the appeal is insubstantial and frivolous.[5] Petitioner filed a memorandum in opposition thereto, and the motion was argued orally on April 28, 1964.

The contention of the Conference that the section 21 order in question is not authorized or supported in whole or in part by the statutes referred to in the order, is insubstantial and frivolous.[6] In this section 21 order the Commission institutes no proceeding against the Conference, accuses it of nothing, nor determines any rights. It only directs the Conference to supply specified information to the agency charged by law with regulating its activities. It has long been established that section 21 gives the Commission power to demand, for this purpose, documents of the kind specified in the challenged order. See Isbrandtsen-Moller Co. v. United States, 300 U.S. 139,.

"(b) The said Order is not authorized or supported in whole or in part by the statutes referred to by the Commission, namely, Sections 15, 17, 18 and 21 of the Shipping Act, 1916 (46 U.S.C., Sections 814, 816, 817 and 820) and Section 212 of the Merchant Marine Act of 1936 (46 U.S.C. Section 1122) or by any provisions of law.

"(c) The Order is unreasonable and oppressive."

4. It was realized that such compliance might render the review proceeding moot. But the court intended the words of the order " * * * there is no probability that petitioner may prevail on the merits * * * " to indicate that the mooting of the review would probably not be prejudicial to petitioner.

5. Review proceedings commenced pursuant to the Review Act of 1950, may be ter-

minated on a motion to dismiss the petition. See sections 6 and 7 of that Act, 5 U.S.C. §§ 1036, 1037(a). A court of appeals may, in the exercise of its plenary power, dismiss a civil appeal as frivolous. John v. Gibson, 9 Cir., 270 F.2d 36, 39; Jimenez v. Barber, 9 Cir., 252 F.2d 550, 554.

6. This is the second of three arguments advanced by the Conference why the section 21 order is invalid. All three of these arguments are set forth, as stated in the petition for review, in note 3 herein, and the statutes relied upon by the Commission in issuing the order are cited in the second of those arguments. See, also, note 9, quoting part of the section 21 order, where the statutes relied upon are cited and their relevance indicated.

144–145, 57 S.Ct. 407, 81 L.Ed. 562; Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 160, 295 F.2d 147, 152–153; Kerr Steamship Co. v. United States, 2 Cir., 284 F.2d 61, 62–63.

 Likewise insubstantial and frivolous is the contention of the Conference that the section 21 order does not state the purpose for which it was issued.

In Montship, 295 F.2d at pages 154–155, it was held that, to enable a reviewing court to determine the relevancy of the information demanded in an order issued under section 21, the purpose for which the information is sought must be apparent from the order itself.[7] In Montship, the order under review contained no indication whatsoever of the agency's purpose and for that reason the order was vacated and the case was remanded to the agency.

In Hellenic Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 151, 295 F. 2d 138, decided on the same day as Montship, an order issued under section 21, although containing something in the nature of a statement of purpose,[8] was vacated on the ground that the statement of purpose was inadequate.

The statement of purpose set forth in the order here under review, quoted in the margin,[9] is far more comprehensive than that which was found inadequate in Hellenic Lines, Ltd. That statement of purpose appears to us to be about as complete and specific as it could possibly be, considering the fact that, as the Commission had a right to do, it had not yet determined that any agreements, rates or fares were unlawful but was seeking information to ascertain the measure of compliance with the named regulatory

7. The court, in Montship, relying upon Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614, and United States v. Morton Salt Co., 338 U.S. 632, 652–653, 70 S.Ct. 357, 94 L.Ed. 401, held that a governmental investigation into corporate matters must be reasonably relevant to a subject properly under inquiry, this depending on the purpose and nature of the investigation undertaken by the agency.

8. The statement of purpose set forth in the order under review in Hellenic Lines, Ltd., reads:
"That pursuant to the responsibilities vested in the Board by the aforementioned Shipping Act, 1916, and in the effectuation in the public interest of the Board's regulatory duties under that Act, the Board needs the reports, accounts, records, rates, charges and memoranda of facts and transactions hereinafter described * * *."

9. "Under various provisions of the Shipping Act, 1916, and the Merchant Marine Act, 1936, the Commission is charged with certain regulatory responsibilities with respect to rates and practices of common carriers in the waterborne foreign commerce of the United States.
"Section 15 of the Shipping Act, 1916, requires, among other things, that the Commission disapprove, cancel, or modify agreements found to be unjustly discriminatory or unfair as between exporters from the United States and their foreign competitors or to operate to the detriment of the commerce of the United States or to be contrary to the public interest. Section 17 of the Shipping Act, 1916, prohibits common carriers by water in the foreign commerce of the United States from charging rates or fares which are unjustly discriminatory between shippers or ports, or unjustly prejudicial to exporters of the United States as compared with their foreign competitors. Section 18(b) (5) of the Shipping Act, 1916, requires that the Commission disapprove rates found to be so unreasonably high or low as to be detrimental to the commerce of the United States.
"Under Section 212(e) of the Merchant Marine Act, 1936, the Commission is required to investigate rates whereby shippers from the United States pay a higher rate from a United States port to a foreign port than the rate charged by the same carrier on similar cargo from such foreign port to such United States port, and to recommend to Congress measures by which such discrimination may be corrected.
"In order that the Commission may be properly informed as to matters bearing upon its responsibilities under these statutory provisions, and to determine what action if any it should take pursuant to such statutory provisions, it is necessary that the conference and the carriers named herein furnish the Commission with the information hereinafter specified."

statutes and the need of future Commission action in fulfillment of its statutory duties.

The Conference's real objection on the score of "purpose" appears not to be that the order fails to state a purpose, or states the purpose inadequately, but that the purpose stated—to obtain information which will enable it to perform its regulatory function with respect to particular statutes, concerning which there is no pending investigation proceeding or finding of probable cause that violations have occurred, is not a proper statutory purpose.

Thus the Conference calls attention to section 6(b) of the Administrative Procedure Act, 60 Stat. 240, 5 U.S.C. § 1005 (b), the first sentence of which requires that no process, requirement of a report, inspection, or other investigative act or demand shall be issued, made, or enforced in any manner or for any purpose " * * * except as authorized by law." In this connection the Conference also makes reference to a comment contained in the Report of the House Committee on the Judiciary concerning this sentence of section 6(b), quoted below.[10]

As heretofore stated, the section 21 order in question requires the production of documents in a manner and for a purpose provided for in section 21 of the Shipping Act, 1916, namely to determine whether specified statutes which the Commission is charged with enforcing, are being complied with and, if not, what agency action should be taken. It follows that the exception to the proscription contained in the first sentence of section 6 (b) of the Administrative Procedure Act applies, i. e., the production is being required in a manner and for a purpose "authorized by law," is applicable.

The first sentence of the part of the Committee Report in note 10 does not manifest the intention of Congress that, under section 6(b) of the Administrative Procedure Act, all so-called "fishing expeditions" will be prohibited, but only those which, as in the case of any other investigations, are "beyond jurisdiction or authority." As this court said in De-Masters v. Arend, 9 Cir., 313 F.2d 79, 88:

"The investigative power granted administrative agencies is inquisitorial in nature; its exercise does not depend upon a showing of probable cause to believe that a violation of law has occurred."

In its memorandum of points and authorities in support of the application for an interlocutory injunction, the Conference intimates that the real purpose of the Commission in issuing the order is to gather documents and data for delivery to the Congressional Joint Economic Committee which has assertedly interested itself in conferences of this kind and in ocean shipping in general. The Conference contends that this would be an improper purpose for a demand under section 21.

We need not determine whether this would be an improper purpose, for it is not one which is stated in the section 21 order, and the purposes there stated are proper and adequate. Persons made subject to a section 21 order valid on its face may not, at least in the absence of a factual allegation of fraud, obtain judicial inquiry into the question of whether the proper and sufficient purposes therein stated are the real purposes, or all of the

10. The House Committee stated:
"This section is designed to preclude 'fishing expeditions' and investigations beyond jurisdiction or authority. It applies to any demand, whether or not a formal subpena is actually issued. It includes demands or requests to inspect or for the submission of reports. An investigation must be substantially and demonstrably necessary to agency operations, conducted through authorized and official representatives, and confined to the legal and factual sphere of the agency as provided by law. Investigations may not disturb or disrupt personal privacy, or unreasonably interfere with private occupation or enterprise. They should be conducted so as to interfere in the least degree compatible with adequate law enforcement."
(Report of the House Committee on the Judiciary, 79th Cong., 2d Sess., H.Re-

real purposes, which motivated the agency.[11]

■ Lastly, the Conference's contention that the order should be set aside and its enforcement enjoined because it is "unreasonable and oppressive." is insubstantial and frivolous.[12]

In an affidavit filed in support of the application for an interlocutory injunction it is estimated that the search for, and duplication of, the documents called for in the section 21 order " * * * would require a period of ten days to two weeks if the other activities of the Conference are not to be disrupted thereby." The courts have upheld orders far broader in scope and patently requiring a great deal more time to fulfill. See Civil Aeronautics Board v. Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (the scope of the order being described in 9 Cir., 237 F.2d 359, 361) ; Westside Ford, Inc. v. United States, 9 Cir., 206 F.2d 627 ; Smith v. Porter, 9 Cir., 158 F.2d 372.

While these cases involved the scope of administrative subpoenas duces tecum, the question of whether subpoenas are excessively broad is no different than the question of whether a section 21 order to produce documents is excessively broad. In each case the question is whether the documents are material and relevant to the proper purposes underlying the subpoena or stated in the order. Considering the proper purposes stated in the section 21 order before us, the kinds of documents and number of commodities involved, the twenty-one month period of time from January 1, 1962 through September 30, 1963, covered by the demand, and the modest amount of time estimated to be required to supply the documents, we perceive no basis whatever for concluding that the order is unreasonable and oppressive.

While this matter is before us on a motion to dismiss the appeal, our consideration of the contentions raised by the Conference has in effect been on the merits. We have heard two oral arguments which have necessarily dealt with the merits, the Conference has supplied us with two memoranda on the law, and the record before us appears to be as complete as necessary for disposition on the merits. Were we to deny the motion to dismiss, and instead expedite the review proceeding, it could not be argued and decided before July, 1964, at the earliest. The considerations mentioned above indicate to us that further postponement of the disposition of this review would serve no purpose other than that of delay.

The motion to dismiss the Petition for Review is granted. The mandate shall issue forthwith.

port No. 1980, May 3, 1946, Pike & Fischer, Admin.Law 2d Series, Current Material Volume, page Stat. 74.)

11. Even if this were a permissible subject of judicial inquiry, it is not contended that it is one which could be effectuated on the Commission record in this particular proceeding. Yet the Conference has not, pursuant to section 7(c) of the Review Act of 1950, 64 Stat. 1130, 5 U.S.C. § 1037(c), applied to this court for leave to adduce additional evidence.

12. See note 3.