**ALCOA STEAMSHIP COMPANY, Inc.,**
Petitioner,

v.

**FEDERAL MARITIME COMMISSION**
and United States of America,
Respondents (two cases).

Nos. 18667, 18818.

United States Court of Appeals
District of Columbia Circuit.

No. 18667 Argued Nov. 5, 1964.

No. 18818 Argued Feb. 8, 1965.

Decided April 15, 1965.

Petition for Rehearing Denied
June 15, 1965.

J. Skelly Wright, Circuit Judge, dissented.

Mr. Elmer C. Maddy, New York City, with whom Mr. Russell T. Weil, Washington, D. C., was on the brief, for petitioner.

Mr. Walter H. Mayo, III, Attorney, Federal Maritime Commission, of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Asst. Atty. Gen., William H. Orrick, Jr., and Mr. James L. Pimper, General Counsel, Federal Maritime Commission, were on the brief for respondents. Messrs. Robert E. Mitchell, Deputy General Counsel, Federal Maritime Commission, and Irwin A. Seibel, Attorney, Department of Justice, were also on the brief for respondents in No. 18818. Mr. John C. Hunt, Attorney, Federal Maritime Commission, entered appearances for respondent. Messrs. Robert E. Mitchell, Deputy General Counsel, Federal Maritime Commission, and Irwin A. Seibel, Attorney, Department of Justice, also entered appearances for respondent in No. 18667. Mr. Milan C. Miskovsky, Solicitor, Federal Maritime Commission, also entered an appearance for respondent in No. 18818.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

BAZELON, Chief Judge:

The Alcoa Steamship Company, a subsidiary of the Aluminum Company of America, is a maritime carrier operating in both the foreign and domestic commerce of the United States, in both common and private carriage. Pursuant to the Intercoastal Shipping Act of 1933,[1] the Federal Maritime Commission has extensive regulatory authority over its operations as a common carrier in the domestic offshore commerce of the United States.

In conjunction with these responsibilities, the Commission is empowered by § 21 of the Shipping Act of 1916[2] to require

"* * * any common carrier by water * * * to file with it * * * any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts or transactions appertaining to the business of such carrier * * *. Such report, account, record, rate, charge, or memorandum shall be under oath whenever the Board * * * so requires, and shall be furnished in the form and within the time prescribed by the Board * * *."

Relying upon this section and its general rulemaking powers, the Commission recently adopted for use in its regulation of the domestic offshore trades the following rule, 46 C.F.R. § 512.5 (29 Fed.Reg. 7721, June 17, 1964):

"All working papers (irrespective of by whom prepared) in support of all exhibits and schedules submitted, as well as the books and records of the carrier, shall be made available upon request for examination by auditors representing the Federal Maritime Commission, and said auditors shall be permitted to make copies of such records to the extent they deem necessary."

Before it adopted the rule, the Commission, relying solely on § 21, had ordered Alcoa to permit Commission auditors to examine its books, accounts and records, so that the Commission might

---

1. Now 46 U.S.C. §§ 843–848.

2. 46 U.S.C. § 820. 46 U.S.C. § 847 makes the provisions of the Shipping Act, including § 21, applicable to the Intercoastal Shipping Act except in cases of inconsistency.

"evaluate and verify" a financial report it had made to the Commission of its activities in the domestic offshore trades during fiscal year 1962. In No. 18667, Alcoa challenges this order; in No. 18818, it challenges the rule.

In both cases, it appears that Alcoa would not object to an audit limited to its activities in the domestic offshore trades, but that the Commission has insisted on its authority and purpose to extend its audit to whatever papers of the steamship company or its parent seem likely to throw light on those activities. This, Alcoa asserts, the Commission may not do. Its argument, however, is not that the scope of the Commission's audit power is limited to records arising directly from its activities in the domestic offshore trades. Rather, it argues that § 21 confers no power on the Commission to audit or otherwise inspect any of its business papers. Were the Commission to exercise such a power, it claims, the confidentiality of its records would be destroyed, to its competitive disadvantage.

Contrary to the Commission's contention, neither prior cases nor the language of § 21 settle the issue thus framed. In previous cases validating the Commission's authority to obtain information under § 21,[3] the phrase "account, record, rate, charge, or any memorandum of any facts or transactions appertaining to the business of such carrier" has been construed only in a context where the matter sought was a copy, summary, list or other form of submission prepared specially

for the Commission and suitable for permanent deposit with it. Original corporate documents were not involved. Moreover, the fact that the statute refers to *filing* rather than "producing" or "inspecting" lends support to the view that original corporate documents are not within the section's coverage. And, as will appear, the legislative history is to the same effect. Finally, the Commission conceded in argument that it does not have authority under § 21 to prescribe a uniform system of accounts. Yet § 21 provides that the documents the Commission may require to be filed "shall be furnished * * * in the form * * * prescribed by the [Commission]." Were it established that the Commission could require original corporate papers to be filed, it would seem that it *could* prescribe a uniform system of accounts.

We think the legislative considerations which are Alcoa's chief reliance in both appeals demonstrate that there was no agency power to inspect corporate documents under the Shipping Act prior to the amendment of that Act in 1961.[4] Where Congress has consistently made express its delegation of a particular power, its silence is strong evidence that it did not intend to grant the power.[5] There is no reference to the power to inspect in § 21, although such authority is expressly conferred both in the prior Interstate Commerce Act[6] and in subsequent acts regulating motor carriers,[7] water carriers,[8] air carriers,[9] and carriers by pipeline and electric trans-

3. Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937); Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 160, 295 F.2d 147 (1961); Hellenic Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 151, 295 F.2d 138 (1961); Far East Conference v. Federal Maritime Comm'n, 119 U.S.App.D.C. ——, 337 F.2d 146 (1964); Kerr Steamship Co. v. United States, 284 F.2d 61 (2d Cir. 1960), vacated as moot, 369 U.S. 422, 82 S.Ct. 874, 7 L.Ed.2d 847 (1962); and Pacific Westbound Conference v. United States, 332 F.2d 49 (9th Cir. 1964).

4. 46 U.S.C. § 841a, 75 Stat. 766.

5. Alaska Airlines v. Civil Aeronautics Board, 103 U.S.App.D.C. 225, 257 F.2d 229, cert. denied, 358 U.S. 881, 79 S.Ct. 120, 3 L.Ed.2d 111 (1958); Trans-Pacific Freight Conference of Japan v. Federal Maritime Board, 112 U.S.App.D.C. 290, 302 F.2d 875 (1962).

6. 49 U.S.C. § 20(5).

7. 49 U.S.C. § 320(d).

8. 49 U.S.C. § 913(f).

9. 49 U.S.C. § 1377(e).

mission.[10] Moreover, the statutes conferring inspection powers also confer special authority to hire inspectors, and a special duty of confidence upon the inspectors, usually enforced by criminal sanctions.[11] Apparently, Congress considers the privacy of corporate records from commercial competitors an important condition of inspection by a regulatory agency. Yet these conditions, too, are absent from § 21.[12]

The history of the Shipping Act itself reveals that Congress intended fewer investigatory and regulatory powers for the Shipping Board (the Commission's predecessor) than were possessed by other regulators of commerce.[13] Maritime carriers, unlike railroads, are in direct competition with foreign carriers who may not be subject to the Commission's investigatory power. Committee reports indicate that Congress feared burdening American carriers with a competitive disadvantage, and therefore intentionally drafted § 21 to confer on the Board "only a part of the power of the Interstate Commerce Commission." [14] This restrictive intent is confirmed by § 27, which establishes the Commission's power to compel production of books and records by subpoena.[15] Unlike other agencies,[16] the Commission may subpoena documents *only* upon alleging violation of the statute.

Nor do subsequent events, prior to 1961, reflect congressional effort to enlarge the agency's inspection powers. Although the Intercoastal Shipping Act of 1933, and its 1938 amendments [17] conferred greater regulatory power over carriers in domestic maritime commerce than did the Shipping Act, no broader

10. 15 U.S.C. § 717g; 16 U.S.C. § 825; see also 46 U.S.C. § 1211 (ocean carriers subsidized by United States).

11. 49 U.S.C. §§ 20(7) (f), 322(d), 917(e), 1472(f); compare sections cited note 10 *supra.*

12. Section 20 of the Shipping Act, 46 U.S.C. § 819, provides that carriers and others within the regulatory jurisdiction of the Commission have a duty of confidentiality but makes no similar provision governing the Commission or its employees. By Commission rule, 46 C.F.R. §§ 502.5, 502.167, some provision for confidentiality of information given the Commission is made.

13. The Commission argues that this history is principally directed to the question of uniform accounts, and that the right to inspect is a subsidiary matter. But both the need to verify carrier reports by inspection and the interference and danger inspection occasions are independent of the carriers' accounting procedures. The legislative history is reasonably clear that Congress and the Commission have treated uniform accounting and inspection as separate issues.

14. S.Rep.No. 689, 64th Cong., 1st Sess. 12–13 (1916). With respect to § 21, the Committee said:
"Section 22 [*i.e.,* the present § 21], relating to the requiring of information, confers upon the board only a part of the power of the Interstate Commerce Commission under Section 20 of the interstate commerce act, by which the commission is empowered to prescribe a uniform system of accounts as well as the form of all accounts, records, and memoranda to be kept by carriers subject to the act, and its examiners given access to such accounts for the purpose of inspection and examination. While it is well within the power of Congress to impose similar requirements upon carriers by water in interstate commerce, the committee deems it neither advisable or necessary, at least at this time, to make the provisions of this bill any more burdensome in this respect upon carriers by water in interstate commerce than those imposed upon similar carriers operating under foreign flags and engaged in the foreign commerce of the United States."
See also H.R.Rep.No. 659, 64th Cong., 1st Sess. 33 (1916); Cong.Rec. 8081 (remarks of Representative Alexander, May 16, 1916).

15. 46 U.S.C. § 826.

16. *E.g.,* 49 U.S.C. § 12 (Interstate Commerce Commission).

17. 52 Stat. 964.

procedural powers were conferred.[18] Apparently until 1961 the Board never sought to verify § 21 reports by inspection or audit.[19] Moreover, in 1961 it suggested to Congress that § 21 be amended to grant expressly the power of inspection.[20]

Thus the dispositive question is whether and to what extent the amendments to the Shipping Act in 1961 brought the Commission's powers up to those of other Federal agencies regulating commerce.[21] Congress refused to amend § 21 to parallel the Interstate Commerce Act. The House Committee, which was principally concerned with substantive matters affecting foreign maritime commerce, declined to consider requests to enlarge procedural authority.[22] Moreover, it reaffirmed the importance of avoiding overregulation in the competition-sensitive shipping industry.[23]

The Senate Committee was also importuned to enact "largely procedural amendments * * * necessary to the adequate and effectual administration of the substantive provisions of the Shipping Act." [24] It was asked both for a general grant of rulemaking authority and for § 21 authority to inspect carrier documents and copy them. "[A]t the urgent request of the Commission," [25] the Senate Committee added to the bill the following provision: "The Commission shall make such rules and regulations as may be necessary to carry out the provisions of this chapter." [26] It stated in its report that the change would "broaden considerably the Commission's rulemaking power as originally outlined in the bill." [27] The change was agreed to by both houses.

Ordinarily we would doubt that this change widened the Commission's investigatory power. It would not seem to

---

18. It is significant, however, that Congress thought itself to be conferring rate-regulatory powers equivalent to those of the Interstate Commerce Commission, H.R. REP.No. 2168, 75th Cong., 3d Sess. 27–28 (1938); compare text at notes 29–31, *infra*.

19. At our request, the Commission submitted an affidavit stating the audits completed by its auditors. The first of the thirty-five audits detailed was completed in July 1963. The Commission does not claim that it or its precedessor agencies attempted audits at any earlier date. Thus, in terms of the statute as it existed prior to 1961, there is a basis for finding an administrative concession of lack of authority. *Cf.* United States v. Leslie Salt, 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956).

20. The language suggested parallels that of 49 U.S.C. § 20 (Interstate Commerce Act). H.R.REP.No. 498, 87th Cong., 1st Sess. 23, 25–26 (1961); S. REP.No. 860, 87th Cong., 1st Sess. 27 (1961).

21. The dissent finds that the Commission has had inspection authority since 1916, because we cannot "attribute to Congress * * * a purpose to require the Commission to accept [reports] on faith alone." But § 21 explicitly provides for verification of reports by filing "under

oath." And the legislative history shows that the failure to provide for verification by inspection was not an oversight. Note 14 *supra*.

22. H.R.REP.No. 498, note 20 *supra*, at 14.

23. *Id.* at 13.

24. Letter to the Committee from the Chairman, Federal Maritime Board, S. REP.No. 860, note 20 *supra*, at 27.

25. *Id.* at 20.

26. 46 U.S.C. § 841a, 75 Stat. 766.

27. S.REP.No. 860 at 20. Initially, the Shipping Act contained several particular grants of rulemaking power (*e.g.*, § 17, now 46 U.S.C. § 816), and an authorization to "adopt rules and regulations in regard to its procedure and the conduct of its business," § 3, 39 Stat. 729 (repealed in 1936). The latter authority seems to have been transferred to the Maritime Board, the Commission's immediate predecessor, by § 204 of the Merchant Marine Act of 1936 (46 U.S.C. § 1114), but the matter was never clearly settled, H.R.Rep.No. 498, note 20 *supra* at 23. Whether § 841a, standing alone, would compel the conclusion that broader rulemaking authority than previously existed had been conferred, we need not decide, since Congress plainly manifested its understanding that it had.

confer power so much as to implement that power which the Commission already had. Indeed, the Senate Committee deleted from the House bill a provision requiring steamship conferences in foreign maritime trade to obtain their members' agreement to provide records or other information, wherever located, when required by Commission order. Friendly maritime nations had stated in the strongest terms that they would sooner see the conferences dissolved than permit confidential business information to be divulged by their nationals. The Committee felt that the provisions would be enforceable only against American-flag lines, and should be deleted to avoid "prejudicing them in relation to their relatively unreachable foreign-flag competitors." [28]

However, we are not dealing here with the ordinary situation. The maritime agency, notoriously weaker than its sister agencies,[29] has been given—especially with respect to *domestic* maritime commerce—substantive regulatory responsibilities of increasing complexity.[30] We cannot assume that Congress would impose these responsibilities without providing the procedural means for bearing them. Hence we are compelled to resolve all doubt of legislative intent in favor of extending the limits of the 1916 Act. So viewed, we think the amendment of 1961 authorizes the Commission

to adopt procedural rules comparable to its sister agencies.[31] It should be noted, however, that the legislative history of the 1961 revision imposes limits on Commission powers. The Commission may only adopt rules necessary to substantive regulation under the Act. And it may not act in a manner which would put an unequal burden on American-flag carriers vis à vis their foreign-flag competitors.[32]

We find the Commission amply supported in its conclusion that access by its auditors to corporate records is necessary to effective administration of its complex rate-regulatory responsibilities under the Intercoastal Shipping Act.[33] However, it does not appear that the Commission has considered whether audit would operate as a discriminatory burden on American-flag carriers. If intended to include all petitioner's records of foreign operations, it might impose such a burden. If meant to apply only to records of operations in the domestic offshore trades, a prejudicial loss of confidentiality apparently would not arise. With minor exceptions, the domestic offshore trades are protected from foreign competition by statute.[34]

We think the Commission should be given the opportunity to reconsider both its rule and its order in light of this opinion.[35]

So ordered.

28. S.Rep.No. 860 at 24–25. See also remarks of Senators Engle and Bartlett, 107 Cong.Rec. 19306–19307 (Sept. 13, 1961). We note, however, that the legislative history approves our decisions in *Montship* and *Hellenic Lines*, note 3 *supra*.

29. *E.g.*, Staff of Subcomm. No. 5, House Comm. on the Judiciary, 87th Cong., 2d Sess., Ocean Freight Industry 321, 359 (Comm. Print 1962).

30. Note 18 *supra*.

31. The Commission's request for legislative clarification of its authority in its annual report for the fiscal year ending June 30, 1962 (pp. 3–4), to which petitioner refers, does not dissuade us of this view. It is more a request for clarification than a confession of lack of au-

thority. Any impact is at least counterbalanced by the subsequent history of administrative practice, note 19 *supra*.

32. Note 28 *supra*.

33. 46 C.F.R. §§ 512.1, 512.2. As the Commission has stated in argument, the right to obtain information ordinarily implies a correlative right to verify that information by independent inspection. Without accurate information, rate regulation would be ineffectual; unverified information is of uncertain value.

34. 46 U.S.C. §§ 877, 883.

35. Alcoa's claim that the rule and order are improperly vague, and do not state a sufficiently defined purpose is obviated by our disposition. See also Far East Conference v. Federal Maritime Comm'n, note 3 *supra*. Nor do we feel it now

**J. SKELLY WRIGHT, Circuit Judge (dissenting).**

It appears to me that the court's opinion runs counter to the developing jurisprudence [1] under Section 21 of the Shipping Act of 1916. 39 STAT. 736, 46 U.S.C. § 820. To suggest authoritatively, as the court does, that the Commission may not have access to the books and records of the carrier to verify the carrier's financial report filed with the Commission is to interfere with the regulatory power conferred on the Commission by Congress. One wonders what use the Commission can make of a financial report it is not allowed to verify. It would appear, to me at least, that if Section 21 provides legal authorization for requiring the report, it should likewise be legal authorization for verifying it. I would not attribute to Congress, as the court apparently does, a purpose to require the Commission to accept the report on faith alone.

I respectfully dissent.

On Petition for rehearing before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

### ORDER

**PER CURIAM.**

On consideration of respondent's petition for rehearing, and of petitioner's opposition thereto, it is

Ordered by the court that respondent's aforesaid petition is denied.

**PER CURIAM:**

In this petition for rehearing, the Commission seeks affirmance of its order and rule on the basis of materials newly submitted to us or, in the alternative, a clarification of our opinion on whether or not the Commission may balance against any "prejudicial loss of confidentiality" its need for the information.

In seeking affirmance, the Commission cites new authority to show that its employees are under a duty of confidence with respect to information coming to them through audit or § 21 reports.[1] This authority, all of relatively recent origin,[2] is irrelevant to our conclusion that, prior to 1961, Congress never conferred on the Commission powers which would enable it to conduct audits of the books of regulated carriers. The Commission has yet to address itself to the mass of legislative considerations which led us to this conclusion.

■ In seeking clarification, the Commission has apparently misunderstood what we found to be the potential basis for its authority to audit or exercise other powers commonly accorded federal agencies but previously denied to it. That basis is not § 21 of the Act, but the 1961

---

necessary to consider whether the Commission must proceed by rule, or may a.so exercise inspection authority by order. Securities & Exchange Comm'n v. Chenery, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947).

1. See Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L. Ed. 562 (1937); Far East Conference v. Federal Maritime Commission, 119 U.S. App.D.C. 110, 337 F.2d 146 (1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 705, 13 L.Ed.2d 611 (1965); Pacific Westbound Conference v. United States, 9 Cir., 332 F.2d 49 (1964); Montship Lines, Limited v. Federal Maritime Board, 111 U.S.App.D.C. 160, 295 F.2d 147 (1961); Hellenic Lines, Limited v. Federal Maritime Board, 111 U.S.App. D.C. 151, 295 F.2d 138 (1961); and Kerr Steamship Company v. United States, 2

Cir., 284 F.2d 61 (1960), appeal dismissed as moot, 369 U.S. 422, 82 S.Ct. 874, 7 L.Ed.2d 847 (1962).

1. 18 U.S.C. § 1905; Federal Maritime Commission Order 53 (as amended).

2. 18 U.S.C. § 1905 was enacted in 1948, as part of the general revision of the Criminal Code. It is a consolidation of several previous statutes, none of which appear to have been applicable to employees of the Commission's predecessors. The effective date of the amended Order 53, which does not appear in C.F.R., is March 11, 1963. We think it inappropriate to consider in advance of the Commission's action on remand the degree to which these provisions operate to protect against burdensome effects which would otherwise foreclose the exercise of rulemaking authority.

amendment of the Act conferring broad rulemaking power upon the Commission, 46 U.S.C. § 841a. In discussing this amendment, we found from the contemporaneous legislative history that the Commission is required to make two independent findings to support any such exercise of the power: (1) that the rule is necessary to substantive regulation under the act; (2) that the rule will not impose an unequal burden on American-flag carriers vis à vis their foreign-flag competitors. The Commission may find, in particular cases, that the burden to be imposed is *de minimus*. But balancing the need for regulation against an unequal burden in fact imposed is not permissible.

■ The Commission's determination whether a burden is likely to occur may not lightly be disturbed on review since the Commission has close acquaintance with the problems involved and the likely effects of its actions. In the context of audit or other inspection of corporate records, the Commission's inquiry might include, *inter alia,* consideration whether: (1) matters discovered are likely to be disclosed to competitors who need not supply like information;[3] (2) audit or inspection can be limited to particular records, whose disclosure would not be prejudicial;[4] (3) being audited or inspected itself imposes a substantial, unshared burden on American carriers. The purposes of this inquiry will not be served by further piecemeal returns to this court. A complete proceeding at the administrative level, leading to formal agency action, is in order.

Rehearing denied.

J. SKELLY WRIGHT, Circuit Judge, would grant the rehearing.

---

3. In its opposition to rehearing, Alcoa stated that the Commission as a uniform practice "releases to interested members of the public any confidential information made use of by the Commission's staff during [rate investigations]." The Commission has not contradicted this.

---

4. There may be certain types of information about operations in foreign commerce which would not be competitively damaging if revealed; in domestic commerce, as we noted, foreign competition is apparently not present.