LUDLOW CORPORATION, Petitioner,

v.

A. T. DeSMEDT, President, American Export Isbrandtsen Lines, Inc., American Export Lines, et al., Respondents.

United States District Court
S. D. New York.

Jan. 25, 1966.

Littauer, Gordon, Ullman & Riseman, New York City, for petitioner Ludlow Corp., Frank H. Gordon, New York City, of counsel.

M. C. Miskovsky, Sol., Federal Maritime Commission, by H. B. Mutter, Washington, D. C., for petitioner, Federal Maritime Commission.

Kirlin, Campbell & Keating, New York City, for respondents, Elmer C. Maddy, John Williams, John M. Linsenmeyer, New York City, of counsel.

RYAN, Chief Judge.

Petitioners Ludlow Corporation and the Federal Maritime Commission seek, pursuant to § 29 of the Shipping Act of 1916, 46 U.S.C. § 828, to enforce obedience to certain subpoenas issued by the Commission. Each petitioner by order to show cause moved to intervene in support of the other's application. An order has been entered permitting Ludlow to intervene and the Commission has withdrawn its motion.

Ludlow, a Massachusetts corporation with its principal place of business in that state, is engaged in the manufacture and distribution of jute products. Respondents are officers or agents of shipping companies which are member carriers of the Calcutta, East Coast of India and East Pakistan/U. S. A. Conference—"the Calcutta Conference," [1] which has common tariffs, rates, practices and rules established pursuant to Agreement No. 8650 and approved by the Federal Maritime Commission on March 31, 1964, under Section 15 of the Shipping Act of 1916, thus giving its domestic and alien member carriers exemptions from domestic antitrust laws. The member carriers of the Calcutta Conference are engaged in common carrier transportation from East India and Pakistan Ports to United States Atlantic and Gulf of Mexico Ports. By virtue of a "dual-rate" contract concluded on July 11, 1964, Ludlow has assumed the obligation to transport all of its imports with member carriers of the Conference.

Whether respondents are American or Foreign Flag members is not disclosed; both take the same position on this application.

1. A steamship conference is a formal association of steamship lines making scheduled sailings over most of the world's trade routes, having for their purpose the reaching of common agreement among their members with respect to transportation rates and other conditions of carriage of goods and passengers.

On July 6, 1965, the Conference filed with the Commission notice of a general across-the-board rate increase to become effective on October 11, 1965. Ludlow immediately entered a protest, and thereafter on August 10, 1965, filed a complaint with the Commission under § 22 of the Act, 46 U.S.C. § 821.

Specifically, the complaint alleges that after October 11, 1965, Ludlow would be required to pay ocean transportation rates detrimental to the commerce of the United States contrary to the public interest, and unreasonably high, in violation of §§ 14b, 15, and 18(b) (5) of the Shipping Act of 1916, 46 U.S.C. §§ 813a, 814, 817(b) (5). The complaint seeks damages, an injunction against the continued use of the allegedly illegal rates, and the establishment of a lawful rate by the Commission.

Pursuant to § 27 of the Act,[2] 46 U.S.C. § 826, a Hearing Examiner of the Commission on October 18, 1965 granted Ludlow's application for the issuance of subpoenas compelling the production of documents by respondents. Later the Examiner issued a clarification of his ruling directing that his decision was not to be construed as requiring production of documents from any place not in the United States. Thereafter, on November 12, 1965, the Commission granted Ludlow's application for the issuance of additional subpoenas requiring the production of documents "wherever located."

On that application respondents sought leave to appeal from the Examiner's ruling compelling production of any documents and in addition contended that the restricting of the subpoenas to documents located only in the United States placed American Flag carriers at a disadvantage with their foreign competitors. This last argument was resolved by the granting of complainant's application and leave to appeal was denied. Respondents have refused to comply as to any documents. They argue that the Commission's application to enforce the subpoenas should be denied because they were not served in accordance with administrative rules, because they were issued without statutory authorization in that no alleged violation of the Act is involved, in that they seek production of documents located outside the United States and of documents irrelevant to an alleged violation. To this petitioners reply that the limitations sought to be imposed on the Commission's power would frustrate its investigative power and Congressional purpose.

Rule 9(c) of the Rules of Practice and Procedure of the Federal Maritime Commission, 46 C.F.R. § 502.133 provides in pertinent part:

> "In making service the original subpoena shall be exhibited to the person served, shall be read to him if he is unable to read, and a copy thereof shall be left with him."

■ Respondents contend that seventeen of the subpoenas here involved were served improperly because they were exhibited and delivered to employees of the respondents. We do not agree that Rule 9(c) requires nothing less than personal service upon the officers of the carriers named as defendants in this action. The Rule does not direct that the person served must be the person named in the subpoena. Moreover, respondents do not question the authority of the employees served. We conclude that the manner of service was in full compliance with Rule 9(c) of the Commission.

■ By the literal terms of § 27 a subpoena may issue only pursuant to an investigation of an "alleged violation." (See Alcoa Steamship Co. v. Federal Maritime Commission, 348 F.2d 756, 759 (D.C.Cir.1965)).

Ludlow's complaint, filed in compliance with the Commission's rules, 46 C.F.R. § 502.62, and § 22 of the Act, 46 U.S.C. § 821, clearly alleges violations of §§

---

2. "For the purpose of investigating alleged violations of this chapter, the Federal Maritime Board may by subpoena compel the attendance of witnesses and the production of books, papers, documents, and other evidence from any place in the United States at any designated place of hearing. * * *."

14b, 15 and 18(b) (5). Nevertheless the respondents maintain that the requirements of § 27 have not been met because the acts charged, i. e., the unreasonably high rates, are not declared unlawful by the Act and cannot constitute a violation of it until they have been outlawed by the Commission—in short that there can be no violation of § 18(b) in advance. This position is in no way supported by the wording of the Act and in principle offends the entire scheme of regulation embodied in the statute. Moreover, it ignores the violations of §§ 14b and 15 charged.

■ Sections 14b, 15 and 18(b) (5) are similar in language and composition. Their interpretation should be governed by like principles.

■■ While they do not declare such contracts or rates "unlawful" these three sections do anticipate that the Commission, after a hearing, shall have the power to disapprove any rate, contract or agreement which is found to be detrimental to the commerce of the United States. It does not follow, however, that the Commission's subpoena powers must remain unexercised because it has not yet withdrawn approval of a currently "lawful" agreement.

■ Section 27 speaks not in terms of "violations" but rather "alleged violations." Ludlow has alleged in substance that the respondents are engaged in activity which the Commission will condemn after due hearing. That is all that is necessary. If, indeed, the complaint did not alleged statutory violations then it would have been vulnerable to a motion to dismiss. Section 22, 46 U.S.C. § 821, provides that "[a]ny person may file with the [Commission] a sworn complaint *setting forth any violation of this chapter* by a common carrier by water, or other person subject to this chapter * * *." (emphasis added.) In light of this express language the contention that "a person can file a complaint without alleging a violation of the Act" is singularly unpersuasive.

The Supreme Court has held that questions arising under the Shipping Act are generally within the primary jurisdiction of the Commission, which is charged with the major responsibility for enforcement. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). It has written that a decision dealing with shipping regulation

> "involves questions of an exceptional character, the solution of which may call for the exercise of a high degree of expert and technical knowledge. Whether a given agreement among such carriers should be held to contravene the act may depend upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect of the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal, but well understood by an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade, and with which that body, consequently, is better able to deal."

United States Nav. Co. v. Cunard Steamship Co., 284 U.S. 474, 485, 52 S.Ct. 247, 76 L.Ed. 408. Whatever may be the form of the agreement, and "whether it be lawful or unlawful upon its face, Congress undoubtedly intended that the [Commission] should possess the authority primarily to hear and adjudge the matter." Id. at 487, 52 S.Ct. at 251.

To assure that the Commission could fully meet its responsibilities, Congress provided it with the necessary means to enforce the regulatory scheme established by the legislation. 53 Cong.Rec. 8084, 8095, 8096 (1916). A complaint proceeding under § 22 was deemed to be one way of supervising Conference activities. Sections 14b, 15 and 18(b) (5) prescribe hearings in order to ascertain whether violations have taken place; in fact § 23, 46 U.S.C. § 822, directs that an order of the Commission may be en-

tered only after a "full hearing." The subpoena provisions of § 27 are obviously a vital complement to the investigatory proceedings prescribed by the Shipping Act. To read or interpret a provision of this nature in a manner which would totally frustrate Congressional intention would be wholly unjustified.

According to the interpretation advanced by the respondents, apparently no subpoena could issue to investigate a 14b complaint unless it was alleged that a contract was being utilized after permission had been withdrawn or before permission had been granted; apparently no subpoena could issue under § 15 unless it was alleged that an unapproved or disapproved agreement had been put into operation. The respondents would have us limit the exercise of the subpoena power to cases involving prima facie violations where the need for a subpoena would be at a minimum.

There is nothing in Federal Maritime Comm. v. Caragher, 243 F.Supp. 136 (S.D.N.Y.1965) to the contrary. The court was there faced with a preliminary investigation initiated by the Commission under § 18(b) (5) to determine whether certain rates were so unreasonably low as to be detrimental to the commerce of the United States, and the holding was that the Commission had no subpoena power except where a complaint had been filed (but Cf. Far East Conference v. Federal Maritime Comm., 119 U.S.App.D.C. 110, 337 F.2d 146 (1964), cert. den., sub nom Pacific Coast European Conference v. Federal Maritime Comm., 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965); Pacific Westbound Conference v. United States, 332 F.2d 49 (9 Cir. 1964)).

Respondents object to that portion of the Commission's order granting additional subpoenas covering documents located outside of the United States on the ground that it would offend both the literal wording and the express intention of Congress with regard to the reach of the subpoena power under § 27. This argument was raised before the Hearing Examiner and overruled by him after a hearing.

First, respondents rely upon the phrase "from any place in the United States" as support for the proposition that the Commission cannot subpoena documents "located" in a foreign country. Petitioners reply that the statute authorizes the production of documentary evidence located outside the country, provided only that the service of the subpoena is made within the territorial limits of the United States, and in support of this interpretation they rely on three cases.

Two of these cases, Kerr Steamship Co. v. United States, 284 F.2d 61 (2 Cir. 1960), appeal dismissed, 369 U.S. 422, 82 S.Ct. 874, 7 L.Ed.2d 847 (1962) (L. Hand, J.) and Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App. D.C. 160, 295 F.2d 147 (1961), while not squarely directed to the question of the Commission's power to subpoena documents located abroad under Section 27, are authority for upholding such power. The decisions there revolved around the authority of the Commission to require both domestic and foreign carriers, under Section 21, to file copies of contracts wherever located or incur severe daily penalties. Both courts sustained the order of the Commission requiring the production of copies of documents located outside the country, but did not pass on the question of the procedure to be employed to compel such production for the reason that it was not before them. Judge Hand in Kerr did, however, refer to Section 27 as one of the sections providing other procedure for such production, but not to the exclusion of an order under § 21. Under § 27 a subpoena commands the same attention as an order of the Commission under § 21 and other sections, and Judge Hand did hold that the Commission could by a § 21 order demand production of originals outside the United States. The court pointed out that in investigating practices of carriers engaged in commerce with the United States it was essential to know what took place outside the United States as well as within; that if the

Board's power to examine witnesses as to transactions had abroad could not be questioned neither could its power to compel the production of a copy of the document reflecting such transaction, and that if such inquiry by the Board annoyed foreign governments that was for the State Department and not for the courts. If these reasons support the power of the Commission to compel production of documents under its general regulatory and investigatory program, how much more do they support its power when it is acting in a quasi judicial capacity on the complaint of one claiming injury because of the acts of persons within its jurisdiction.

The same Commission order was upheld by Judge Bazelon in Montship in the District of Columbia Court of Appeals as against all foreign flag respondents and, rejecting their argument that § 21 should be restricted as they contended § 27 to documents located in the United States, he said that it was questionable whether the Board was powerless under the latter section to subpoena documents outside the United States, and cited S. E. C. v. Minas De Artemisa, S. A., 150 F.2d 215 (9 Cir. 1945).

To distinguish between the holdings in Kerr and Montship and this case on the presence of the words "from any place in the United States" is to say that where the Board is gathering information for the purpose of regulating or enforcing generally with no charge of a violation of the Act it has more power than when it is adjudicating a specific alleged violation. Such a "bifurcation of the Board's authority" (Montship, 295 F.2d p. 153) is not supported in logic or in the purpose of the Act.

In the De Artemisa case a similarly worded statute, § 19(b) of the Act, 15 U.S.C. § 77s(b) " * * * the production of such documentary evidence may be required from any place in the United States" was held not to limit the power of the Commission in conducting an investigation of a foreign corporation doing business in the United States to subpoena relevant documents only in the United States. The words "from any place in the United States" were construed by the court as expanding the reach of the Commission's subpoena power beyond the territorial limits imposed by Rule 45(e)—rather than restricting its inquisitorial power because of the fortuitous placement of the documents sought.

The presence of these words in § 27 and their absence from § 21 has no significance other than that one deals with subpoenas which are limited by Federal Rules of Practice, while the other is not. For the same reason the legislative history referred to by respondents has nothing to do with the question before us. As the court pointed out in Artemisa, the sole territorial limitation on the subpoena was that it be served within the United States. The reasoning of Judge Healy that to immunize a foreign corporation doing business in the United States merely because it maintained its documents in its principal place of business outside of the United States would be discriminatory and violative of Congressional purpose to regulate all corporations subject to the Commission's jurisdiction, applies with equal force to our situation. Indeed discriminatory treatment was the very basis of the objection initially raised by respondents before the Commission when they argued that to limit the subpoenas to places within the United States would place domestic flag carriers at a disadvantage with their foreign flag competitors. Their objection was well taken since a domestic carrier with its principal place of business in the United States could hardly argue for immunity from producing such documents as it might maintain in a foreign office. Obviously considerations of undue interference with foreign governments and companies, the reasons usually advanced against production of documents located abroad, would not apply to domestic carriers. The result would be that while these carriers would be required to produce all their documents their foreign competitors would be excused from doing so. Such

arbitrary treatment is not consonant with the purposes of the Shipping Act which is for the benefit of all carriers—whether domestic or foreign—and which must apply with equal force to them impartially. Recognizing this the respondents have broadened their attack and would have this court insulate all carriers subject to the Act whether of foreign or domestic flag—so long as their documents happened to be found outside the United States. There then would be nothing to prevent them from removing or maintaining all their documents abroad, and considering the nature of the business they are engaged in it is not unlikely that that is just where their documents might be found. That the administration of the Shipping Act cannot turn upon the incidental or accidental, or even intentional location of documents, is obvious.

■ In any event whether foreign flag or domestic, respondents are all within the jurisdiction of the Commission; they maintain an office for the transaction of business in the United States; they have affirmatively sought and obtained examinations of the complainant Ludlow in the proceedings pending before the Commission and have answered the complaint. We conclude that to compel them to produce evidence, wherever located, relevant and necessary to a determination of the charges made against them of violation of a statute under which they enjoy certain immunities is clearly within the power of the Commission.

As a last resort, the respondents contend that the data requested is irrelevant to a complaint proceeding under § 18(b) (5). They argue that some of the items listed in the subpoenas bear only on the question of the rate of return earned by each carrier in the Conference, and as the Commission does not have the general power under § 18(b) (5) to determine the reasonableness of Conference freight rates the material requested must therefore be deemed irrelvant.

■ Respondents did not raise this objection either at the initial hearing before the Examiner or at the proceedings before the Commission. The first claim of irrelevancy appeared in a letter dated December 2, 1965 addressed to the Examiner informing him that the respondents would not comply with the subpoenas. Under familiar principles of exhaustion of administrative remedies in the absence of extraordinary circumstances a reviewing court should refrain from passing upon a question not urged before the Commission. See, e. g., Unemployment Compensation Comm. v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946). The rule is designed to give the agency charged with the primary responsibility for enforcement the initial opportunity to pass upon the question. See Hennesey v. Securities & Exchange Comm., 285 F.2d 511, 515 (3 Cir. 1961). Respondents neglected to raise the matter in a timely fashion at the administrative level, and hence may not press the contention here.

■ But, even if the question had been seasonably raised before the Commission, it is improbable that the information sought would be irrelevant to a determination of whether the rates here involved would be "so unreasonably high or low as to be detrimental to the commerce of the United States." Far East Conference v. Federal Maritime Commission, 119 U.S.App.D.C. 110, 337 F.2d 146, 150–151 (1964), cert. den., sub nom Pacific Coast European Conference v. Federal Maritime Comm., 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965). A subpoena generally meets the requirements for enforcement if the information sought is only reasonably relevant to the ultimate inquiry.

■ Respondents' final objection that the court should not order compliance with the subpoenas as to documents not in existence is premature or has been mooted by the Commissioner's ruling at the hearing of December 7, 1965 that no such production was sought or would be ordered. This is clearly an afterthought which was not raised by respondents in

answer to the petition, and it is over-ruled.

Settle order on notice to be promptly given directing compliance by respondents with subpoenas.