**FEDERAL TRADE COMMISSION**

v.

**Donald P. CARTER, Post-Keys-Gardner, Inc., Anthony C. Chevins, Cunningham & Walsh, Inc., Paul R. Dooling, William Esty Co., Inc., Clifford Fitzgerald, Dancer-Fitzgerald-Sample, Inc., Charles Hamm, F. William Free & Co., Inc., Robert K. Heimann, American Brands, Inc., William D. Hobbs, R. J. Reynolds Tobacco Co., Robert E. Jacoby, Ted Bates & Co., Inc., Don Johnston, J. Walter Thompson Co., James Jordan, Batten, Barton, Durstine & Osbourn, Inc., Curtis H. Judge, Loew's Theatres, Inc., Stanley H. Katz, LKP International, Ltd. d/b/a Leber Katz Partners, Leo-Arthur Kelmonson, Kenyon & Eckhardt Advertising, Inc., John Kinsella, Leo Burnett Co., Inc., C. I. McCarty, Brown & Williamson Tobacco Corp., Edward H. Meyer, Grey Advertising, Inc., Ross R. Millhiser, Philip Morris, Inc., Charles Moss, Wells, Rich, Green, Inc., Raymond J. Mulligan, Liggett Group, Inc., Thomas K. Myers, Norman, Craig & Kummel, Inc., Edward N. Ney, Young & Rebicam International, Inc., John E. O'Toole, Foote, Cone & Belding, Chester L. Posey, DeGarmo, Inc., Alfred J. Seamon, SSC&B, Inc., Robert B. Zabel, and NW Ayer ABH International, Appellants.**

**FEDERAL TRADE COMMISSION**

v.

**Donald P. CARTER et al., B. Blair Vedder and Needham, Harper & Steers, Inc., Appellants.**

Nos. 79–1331, 79–1332.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 7, 1980.

Decided Nov. 28, 1980.

Martin London and Eugene R. Anderson, New York City, with whom Andrew Kull, New York City, Abe Krash, Philip J. Harter, Paul Daniel, Edmund E. Harvey, John F. Kovin, Harold D. Murry, Jr., Linda Eliza-beth Buck, James H. Wallace, Jr., Arthur F. Sampson, III, Washington, D. C., Howard Abrahams, New York City, Elroy H. Wolff, Jamie S. Gorelick, Washington, D. C., Daniel J. O'Neill, Charles K. O'Neill, David H. Carlin, Charles Ballon, New York City, were on the brief, for appellants.

Arthur W. Adelberg, Atty., Federal Trade Commission at the time the brief was filed, Washington, D. C., with whom Gerald P. Norton, Deputy Gen. Counsel, Federal Trade Commission, Washington, D. C., was on the brief, for appellee. Joanne L. Levine, Atty., Federal Trade Commission, Washington, D. C., also entered an appearance for appellee.

Before MacKINNON, ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

Concurring opinion filed by Circuit Judge WILKEY.

MacKINNON, Circuit Judge:

These consolidated appeals are brought by 26 tobacco and advertising corporations, or their parent corporations, and 26 chief executive officers of the corporations. Appellants contest an opinion and order of the Honorable Barrington D. Parker enforcing 26 subpoenas *duces tecum* issued by the Federal Trade Commission to the 52 respondents in the course of an investigation of cigarette advertising and promotion. We affirm.

Most of the issues raised in this forum were dealt with convincingly in the district court. We find unquestionable Judge Parker's conclusion that the FTC has the statutory authority to initiate an investigation into cigarette advertising, and to issue subpoenas as part of that investigation. We also find no abuse of discretion in his denial of appellants' discovery requests. On the other hand, while we uphold Judge Parker's finding that the Statement of Purpose promulgated by the FTC provides generally sufficient notice, we leave the door open for appellants to raise specific objections to

production of documents that may fall outside the investigation's stated scope. Finally, we decline to dismiss the individual corporate respondents from the suit since we conclude that they are proper parties. Although we are not completely comfortable with the method of service of process practiced by the FTC in this case, we find that it was legally sufficient for the purposes of this enforcement proceeding and within the discretion of the district court to approve.

## I

On May 11, 1976, the FTC launched an investigation into the methods of advertising and promotion utilized by the cigarette industry. The Commission issued an authorizing resolution that identified the nature and scope of the investigation as follows:

> To fulfill its obligation to report to the Congress pursuant to Section 8(b) of the Federal Cigarette Labelling and Advertising Act, as amended,[1] and to gather and compile information and make reports to the Congress as authorized by Section 6 of the Federal Trade Commission Act;[2] and to determine whether persons, partnerships, or corporations engaged in the manufacture, advertising, promotion, offering for sale, sale, or distribution of cigarettes may have been or may be engaged in the use of unfair or deceptive acts or practices, in or affecting commerce, in the advertising, promotion, offering for sale, sale, or distribution of cigarettes in violation of Section 5 of the Federal Trade Commission Act.[3] (Footnotes added.)

The following day, May 12, 1976, the Commission issued 28 subpoenas,[4] addressed to the chief executive officer of each corporate entity.[5] As they have been subsequently modified by agreement of the parties,[6] the subpoenas require production of documents or verified statements relating to: 1) respondents' corporate organizations and structure; 2) information prepared by or for respondents since January 1, 1964, concerning "consumers' or potential consumers' attitudes towards, beliefs about, perceptions or understanding of, or behavior relating to, cigarettes", and since January 2, 1971, cigarette advertising; 3) cigarette advertisements prepared by or for respondents since January 2, 1971, whether or not disseminated.

In September of 1976, the companies filed motions to quash or limit the subpoenas pursuant to the Commission's Rules of

---

1. Section 8(b), 15 U.S.C. § 1337(b), provides that:

   The Federal Trade Commission shall transmit a report to Congress not later than January 1, 1971, and annually thereafter, concerning (A) the effectiveness of cigarette labelling, (B) current practices and methods of cigarette advertising and promotion, and (C) such recommendations for legislation as it may deem appropriate.

2. The Commission shall also have power—

   (a) To gather and compile information concerning, and to investigate from time to time the organizations, business, conduct, practices, and management of any person, partnership, or corporation engaged in commerce ... and its relation to other persons, partnerships, and corporations.

   . . . . .

   (f) ... and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation ...

3. Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

   15 U.S.C. § 45(a)(1).

4. The FTC issued subpoenas to two research corporations, the Tobacco Institute, Inc., and the Council for Tobacco Research-USA, Inc., for which the district court denied enforcement, finding "that it would 'disrupt [and] unduly hinder the normal operations' of these research corporations to search all their files for subpoenaed materials that other respondents would be producing." D.C., 464 F.Supp. 633, 641, *citing In re: FTC v. Line of Business Cases*, 595 F.2d 685, 703 (D.C.Cir.), *cert. denied, American Air Filler Co. v. FTC*, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978). The FTC does not appeal from this determination.

5. The 28 identical subpoenas were issued to six cigarette manufacturers, twenty of their advertising agencies and two research corporations, and were addressed to the 28 chief executives.

6. The subpoenas were issued on May 12, 1976, and modified by letters dated August 6, 1976 and May 17, 1977.

Practice, 16 C.F.R. § 6217(b). The Commission substantially denied the motions; following the respondents' failure to comply, the Commission filed a petition for enforcement in the court below.

On June 24, 1977, the respondents brought an action against the FTC in the district court of the Southern District of New York to declare the subpoenas invalid and enjoin enforcement. They also moved in the district court of Washington, D. C. for transfer. This motion was first denied, then assigned to another judge and granted, and then finally decided by a panel of this court, which vacated the transfer order. The respondents doggedly renewed their transfer motion before Judge Parker, but he denied it in his opinion, 464 F.Supp. at 637. Judge Parker's opinion ordered full enforcement of the FTC's subpoenas issued to those respondents bringing this appeal.

## II

■ Appellants' first claim, that the FTC lacks statutory authority to conduct an industry-wide investigation of the cigarette industry, raises old arguments that we had presumed were laid to rest by the Supreme Court's decision in *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). In *Morton*, the Commission ordered a company to file special reports to show compliance with the terms of a decree issued under section 5 of the FTC Act, 15 U.S.C. § 45, which makes unlawful unfair or deceptive acts or practices. The company argued that the Commission's section 6 investigatory authority could be used only in support of general economic surveys, as had been the practice under the Commission's predecessor agency, the Bureau of Corporations, and that section 6 investigatory power could not be used in aid of section 5 proceedings. The Supreme Court rejected this claim:

> While we find a good deal which would warrant our concluding that § 6 was framed with the pre-existing antitrust laws in mind, and in the expectation that the information procured would be chiefly useful in reports to the President, the

Congress, or the Attorney General, *we find nothing that would deny its use for any purpose within the duties of the Commission, including a § 5 proceeding.* (emphasis added).

338 U.S. at 649, 70 S.Ct. at 367.

The breadth of section 6, subsections (a) and (f), is reflected in its terms:

> The Commission shall also have power—
>
> (a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce, excepting banks, savings and loan institutions described in section 57a(f)(3) of this title, and common carriers subject to the Act to regulate commerce, and its relation to other persons, partnerships, and corporations. (As amended by P.L. 96–37 (1979)).

.     .     .     .     .

> (f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.

15 U.S.C. § 46.

Section 9 of the Act, 15 U.S.C. § 49, renders operational the Commission's investigative authority by granting it the power to subpoena evidence and witnesses. The section provides:

> For the purpose of [this Act] the Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the

attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation . . . .

The FTC cites sections 6 and 9 as its statutory authority for initiating this investigation, and for issuing subpoenas in pursuance thereof. While appellants attempt to convince the court that we should not give a blanket endorsement to an investigation solely by reference to the broad terms of sections 6 and 9, all we need inquire after *Morton Salt* is whether the investigatory power is being used "for any purpose within the duties of the Commission". 338 U.S. at 649, 70 S.Ct. at 367. The Commission referred to three duties sought to be fulfilled by this investigation in its authorizing resolution. The first of these, the Commission stated, was "to gather and compile information and make reports to the Congress as authorized by Section 6". The Commission is correct in referring to section 6 as the statute not only *authorizing* an investigation, but also specifying several *purposes* for one—to gather information and to make reports to Congress concerning the need for additional legislation. *See* sections 6(a) and (f), *supra.* The Commission is also well-advised to refer to other duties that it seeks to effect in its investigation, since sections 6(a) and (f) provide authority for implementation of Commission duties enumerated in other statutory sections.

Hence, the Commission's reference to section 5 bases its investigation upon firm grounds, since under that section "[t]he Commission is empowered and directed to prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." Despite this clear congressional directive to prevent unfair or deceptive acts or practices, appellants contend that the Commission should be required to show a reasonable likelihood that its investigation will gather evidence of such unfair prac-

tices. Once again, this claim was rejected more than twenty years ago in *Morton Salt* when the Supreme Court found the FTC's investigatory function to be comparable to that of the Grand Jury, which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." [7] 338 U.S. at 642–43, 70 S.Ct. at 363–64. More recently, we ruled that the Commission is not limited by "forecasts of probable result of the investigation", nor is the district court "free to speculate about the possible charges that might be included in a future complaint". *FTC v. Texaco, Inc.*, 555 F.2d 862, 874–76 (D.C.Cir.) (*en banc*), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977).

The Commission also cites to the fulfillment of its duties under section 8(b) of the Cigarette Labelling and Advertising Act, 15 U.S.C. § 1337(b), *see* note 1 *supra,* as an additional purpose of its investigation, and we concur. In the Cigarette Labelling and Advertising Act Congress clearly imposed a "duty" upon the Commission, and thus the holding of *Morton Salt* that the Commission's investigatory authority may be used "for any purpose within the duties of the Commission" is equally applicable. Although appellants at all stages of this enforcement proceeding argued that information pertaining to cigarette advertising in the years past is not relevant to the Commission's duty under Section 8(b) of the Cigarette Labelling and Advertising Act to report annually to Congress on the "current practices and methods of cigarette advertising and promotion", we agree with the determination of Judge Parker that "a general inquiry into the evolution since 1964 of consumer attitudes and beliefs regarding smoking is relevant to current consumer perception of advertising". 464 F.Supp. at 640. Such information may be useful to the Commission in its preparation of reports to

---

7. Later in its opinion, the court stated:

Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate

right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

338 U.S. at 652, 70 S.Ct. at 368.

the Congress, and in its recommendations for legislation.

We thus conclude that the Commission has sufficient statutory authority to conduct the investigation it has ordered and that the investigation is related to congressionally prescribed duties of the Commission. We next consider whether the Commission's statement of purpose gives adequate notice of legitimate purposes of the investigation.

### III

■ Appellants contend that the Commission's Resolution Directing Use of Compulsory Process does little more than restate the Commission's statutory bases of authority to conduct the investigation, and therefore fails to provide adequate notice of the purposes of the investigation. Appellants complain that the Resolution, *see* page —— *supra*, lacks specificity, and argue that this violates the Fourth Amendment, renders impossible a determination of the relevance of items sought by the subpoenas, and also violates the Commission's Rules of Practice, which require that:

> Any person under investigation compelled or requested to furnish information or documentary evidence shall be advised with respect to the purpose and scope of the investigation.

16 C.F.R. § 2.6.

In support, appellants claim reliance on our decision in *Montship Lines Ltd. v. Federal Maritime Board*, 295 F.2d 147, 155 (D.C. Cir.1961), in which a demand of the Federal Maritime Board for documents was remanded to the agency because it provided "no indication whatsoever" of the investigation's purpose and therefore afforded no basis for determining the relevancy of the information demanded. Appellants also profess to find support in *C.A.B. v. United Airlines, Inc.*, 542 F.2d 394 (7th Cir. 1976), in which the court refused to order United Airlines to submit to a search of its records by the C.A.B. because the agency declined to state any investigative purpose other than enforcement of its statutory authority.

It is difficult to characterize appellants' support in the caselaw as anything but meager. We distinguished our *Montship* decision in *Far East Conference v. Federal Maritime Commission*, 337 F.2d 146 (D.C. Cir.1964), *cert. denied*, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965), because the agency in *Far East* had set forth the purpose of the investigation by reference to particular sections of the statute sought to be enforced. We thus acknowledged that an agency will be deemed to have given adequate notice of the purposes of an investigation by reciting its statutory duties when the statutes themselves alert the parties to the purposes of the investigation.

The Seventh Circuit was confronted with a far different situation in *C.A.B. v. United Airlines*. Although the C.A.B. was broadly authorized to inspect the records of air carriers, the court was especially sensitized to Fourth Amendment concerns when the facts revealed that agents of the C.A.B. arrived unannounced at the offices of United Airlines and requested immediate access to all records and documents on the premises. Although this request was subsequently "limited" to several broad categories such as correspondence, memoranda and expense reports, the Board steadfastly refused to state the purpose of its investigation. The court accordingly balked at the demands of the Board, equating them to a general warrant, and ruled that without a statement of purpose it was impossible to make the necessary determination of relevancy of the documents sought. 542 F.2d at 402–03.

We need pause only briefly at the obvious, that Fourth Amendment standards applicable to a search are more stringent than those governing an agency subpoena. *See Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614 (1946). Hence, it was incumbent upon the Seventh Circuit to scrutinize the conduct of the C.A.B. in *United Airlines* when it attempted to *search* the offices of the airline without so much as a polite reference to the purpose of its attempted search. The facts of this case involve exercise of the subpoena power, not a search of premises, and the agency identified both its statutory

bases of authority as well as the subject of the investigation. When any agency invokes its subpoena power, "it is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command." *Oklahoma Press, supra,* 327 U.S. at 208–209, 66 S.Ct. at 505.

The Commission equaled this standard, and allowed our examination of the relevance of their subpoena requests, by identifying the specific conduct under investigation—cigarette advertising and promotion—and specific statutory provisions that confer authority and duties upon the Commission. Section 8(b) of the Cigarette Labelling and Advertising Act, under which the Commission must report to Congress on the effectiveness of cigarette labelling and current practices and methods of cigarette advertising and promotion, is self-expressive of several purposes of this investigation. We can therefore say that recitation of the statutory authority itself alerts the respondents to the purposes of the investigation. Section 5's prohibition of unfair and deceptive practices, which, standing broadly alone would not serve very specific notice of purpose, is defined by its relationship to section 8(b), as is the extremely broad and non-specific statutory authority to compile information and make reports to Congress conferred upon the Commission in section 6 of the FTC Act. The Commission additionally defined the application of section 5 in the Resolution by relating it to the subject matter of the investigation—"the advertising, promotion, offering for sale, sale, or distribution of cigarettes...." We thus feel comfortably apprised of the purposes of the investigation and subpoenas issued in its pursuit, and suspect that respondents, who may feel less comfortable, are also quite aware of the purposes of the investigation.

■ We also concur in the district court's finding that the documents subpoenaed are reasonably relevant to the purposes of the investigation. As we recently held in *SEC v. Arthur Young & Company,* 584 F.2d 1018, 1029 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979), the test is satisfied if the documents sought are "not plainly irrelevant" to the investigative purpose. We have also stated that the Commission's determination of relevance should be accepted if not "obviously wrong". *FTC v. Texaco, supra,* 555 F.2d at 877 n.32. Given these permissive standards, we have little difficulty affirming the district judge's determination of relevance. Although the respondents cleverly describe the undisseminated advertisements sought by the Commission as having "no capacity to deceive", the advertisements may reveal steps in the *formulation* of a deceptive advertising method that was practised upon unsuspecting Americans. But at this point we admit that we enter the realm of speculation, which is neither called for nor required in a determination of relevance. Instead, we reiterate that we cannot label undisseminated advertisements as "plainly irrelevant", and therefore they pass the test of relevance. For the same reasons, even though cigarette advertising has changed with the termination of some broadcast cigarette advertising in 1971 and mandatory health statements, we cannot say that the Commission's decision to require the production of some advertisements dating back to 1964 was "obviously wrong". The district court was quite possibly correct when it stated that "the evolution since 1964 of consumer attitudes and beliefs regarding smoking is relevant to current consumer perception of advertising". 464 F.Supp. at 640. Certainly this explanation, or the relevance the Commission conjectures, is not "obviously wrong".

While we uphold the Resolution as providing adequate notice of purpose, and feel that initial determinations of relevance have been satisfied, we think that we should reserve in the respondents the right to raise specific objections to the production of certain documents. Since the scope of the investigation is admittedly broad, we can conceive of circumstances in which the Commission ought to provide a more detailed explanation of the relevance of documents to the purpose of the investigation. Most assuredly we do not invite delay or obduracy on the part of respondents, but

rather only intend that they receive specific rulings of relevancy if the broad categories listed in the subpoenas encompass materials that have *no* initial facial relevance to the purposes of the investigation.

## IV

Appellants' third claim is that the district court abused its discretion in denying their discovery requests. In particular, appellants had hoped to utilize discovery to uncover evidence that the FTC was initiating the investigation for the assertedly improper purpose of banning all cigarette advertising, and that the Commission's denial of appellant's motion to quash the subpoenas "had been based in part on illegal *ex parte* contacts with the staff [of the FTC] . . . ."

■ Discovery requests are not looked upon favorably in subpoena enforcement proceedings; nor are appellate courts inclined to reverse the denial of discovery by a district judge for anything but an abuse of discretion. *FTC v. Browning*, 435 F.2d 96 (D.C.Cir.1970). We have recently stated that "[e]xcept in extraordinary circumstances . . . , discovery is improper in a summary subpoena enforcement proceeding". *United States v. Exxon*, 628 F.2d 70 at 77 n.7 (D.C.Cir., 1980). We thus turn to ascertain whether this case presents extraordinary circumstances that would justify discovery during the enforcement proceeding.

■ Appellants' fear that the FTC intends to ban all cigarette advertising is understandable, but this fear gives no cause for discovery into the "true" purposes of the FTC's investigation. In *FTC v. Texaco, Inc., supra*, 555 F.2d at 874, we held that the validity of Commission subpoenas is to be measured against the purposes stated in the resolution, and not by reference to extraneous evidence. We have already determined that the FTC's resolution states a proper, statutorily authorized purpose. Moreover, the Supreme Court in another

context has stated that even if an improper purpose by an agency or member of the staff is shown, enforcement of the subpoena is called for so long as proper purposes exist as well. *Donaldson v. United States*, 400 U.S. 517, 534–35, 91 S.Ct. 534, 544, 27 L.Ed.2d 580 (1971). It is pure speculation to suggest that the FTC investigation has but one purpose, especially when the Resolution makes no reference to the allegedly invalid purpose that is claimed.[8] Accordingly, the district judge's denial of discovery concerning this claim was proper.

■ Appellants also appeal from the district court's denial of their request to conduct discovery concerning *ex parte* contacts assertedly made between the Commission and its staff during the pendency of appellants' motion to quash the subpoenas. Leaving to the side the dubious question whether contacts made between these parties under these circumstances is in violation of due process and the standards addressed in decisional law, we rely upon the statement of the district judge that "since the Court views an enforcement proceeding *de novo*, information relating to alleged administrative improprieties is irrelevant to this proceeding." 464 F.Supp. at 638. Because we perceive no extraordinary circumstances that would justify granting the discovery requests of appellants, we uphold the district court's denial of discovery on this claim as well.

## V

■ Lastly, the individual corporate officer respondents raise several interrelated objections to their inclusion as parties to the suit. The officers complain that their presence in the suit is unnecessary, that the district court lacked jurisdiction over them, and that the Commission failed to properly serve them with notice of the action. With only slight reservations, we reject these contentions as well.

8. Moreover, we are skeptical that appellants have pinpointed a truly illegitimate purpose. Since under section 6(f) of the Act, the Commission is empowered "to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation . . .," an FTC investigation into whether cigarette advertising *should* be banned would have a legitimate, rather than an illegitimate purpose.

The FTC issued 28 subpoenas that were addressed to the chief executive officers of each of the cigarette, advertising or research companies subject to the investigation. When commencing its enforcement action in the district court, the FTC named a total of 56 respondents, consisting of both the corporations and the individual officers. All of the individual respondents sought dismissal on the ground that they were not proper parties to the proceeding, and seven of the individuals raised the additional ground of lack of service of process.

Arguing first that they are unnecessary to enforcement of the subpoenas, the corporate respondents would have us reverse the district court's decision not to dismiss them as parties. The district court held that:

> while it appears that the Court could fully enforce the subpoenas without the individual respondents, in view of the breadth of this cigarette advertising investigation and the strong likelihood that testimony would be required, the Court determines that the Commission acted within its discretion in naming the individual corporate officers.

464 F.Supp. at 638. We agree with the determination of the district court. *See also FTC v. Anderson*, 631 F.2d 741 at 751 (D.C.Cir., 1979).

The officers next assert that the district court lacked jurisdiction to order them to comply with the terms of the subpoena. Jurisdiction *vel non* is conferred by section 9 of the FTC Act, which states:

Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, *in case of contumacy or refusal to obey a subpoena* issued to any person, partnership or corporation, issue an order requiring such person, partnership or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof. 15 U.S.C. § 49. (Emphasis added.)

Appellants argue that since they never were required to, nor refused to, testify,[9] the district court had no jurisdiction to render a judgment against them. Appellants admit the flaw in their argument, however, by conceding that "there can be no question that the corporate respondents refused to comply with the subpoenas by failing to deliver the documents called for on the return date...." Appellants' Supp. Brief at 7. Certainly the respondents' failure to produce the documents on the date specified by the subpoena constitutes "contumacy or refusal to obey a subpoena" within the terms of section 9 of the Act, triggering the Act's grant of jurisdiction to the district court. We therefore find that the district court properly assumed jurisdiction over the respondents.

The officers' final argument is that because the Commission failed to serve all but

**9.** Along with the subpoenas each executive received the following letter:

FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580
May 11, 1976
BUREAU OF
CONSUMER PROTECTION
Mr. Robert K. Heimann, President
American Brands, Inc.
245 Park Avenue
New York, New York 10017
Re: Subpoena Duces Tecum
Dear Mr. Heimann:

The attached subpoena duces tecum requires you to appear in my office on July 15, 1976 and to produce the materials called for by the Specifications.

This letter will serve to inform you that the terms of the subpoena will be satisfied by the delivery of the documents called for, and your personal appearance on such date is not required.

Should we desire, at a later date, to pursue our inquiries by requiring your personal appearance, we will advise you of that fact. If you have any questions regarding any of the terms of the attached process, please do not hesitate to contact me.

Very truly yours,
/s/ _____
Mark D. Gordon
Attorney
Division of National Advertising

Although respondents argue that the terms of the letter excused them from testifying, it does so only upon the condition that the documents requested be delivered on the date specified.

four of them personally with process, they should have been dismissed by the district court. The enforcement petitions and orders to show cause were addressed to the chief executive officers and were delivered by the U.S. Marshal to the corporations' headquarters, but in all but the four instances, were apparently handed to other employees of the corporations. The district court denied the dismissal motion, stating:

> Certain respondents argue that they have not been properly served, and have submitted affidavits to that effect. The Commission argues, and the Court agrees, that even if personal service was not effected, the proper course is to allow reservice *nunc pro tunc.* They do not argue that they did not receive actual notice, and they are otherwise proper parties.

464 F.Supp. at 638.

Although the district court did not cite to Federal Rule of Civil Procedure 81(a)(3), the rule provides the authority by which the district judge could allow a less formal service of process than that generally required under Rule 4. Rule 81 discusses the applicability of the Federal Rules of Civil Procedure, and in subsection (a)(3) states:

> These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States *except as otherwise provided* by statute or by rules of the district court or *by order of the court in the proceedings.*

(Emphasis added). The Advisory Committee Note of 1946, the year in which the last amendments relevant to this discussion were made, states that "the provision allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired.... [It] is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful".

██ While we would find personal service preferable, and think that the Commission should consider sending separate copies of the enforcement petitions and order to show cause to both corporation and executive when both will be considered to be respondents in an enforcement action, appellants do not contend that they were denied notice of the subpoena or deprived of an adequate opportunity to prepare a defense against the enforcement action. *See Federal Election Commission v. Committee to Elect Lyndon La Rouche,* 613 F.2d 849 at 862 n.19 (D.C.Cir., 1979). We conclude therefore that the district judge acted within his discretion when he approved the method of service employed by the Commission.

## VI

In conclusion, we uphold the decision of the district court against all objections made by appellants. The Commission's subpoenas shall be enforced, and the investigation allowed to pursue its course.

*Judgment accordingly.*

WILKEY, Circuit Judge, concurring:

I am in agreement with all of the opinion except Part III. I am convinced that neither the purpose nor the scope of this investigation is adequately stated by the Federal Trade Commission at the outset; therefore, there was lacking the sufficiency of a fair notice which is the essence of due process. However, since the opinion of the court "leave[s] the door open for apellants to raise specific objections to production of documents that may fall outside the investigation's stated scope" (and see concluding paragraph of Part III of the court's opinion), I am disposed to agree with the result of remand reached here, in the belief that the trial judge will exercise an informed and conscientious discretion when the above referred to specific issues are raised.